In re SMITH, THORNDIKE & BROWN CO.

SMITH v. WISCONSIN TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909.)

No. 1,492.

**1. CORPORATIONS (§ 432\*)—OFFICERS—AUTHORITY OF TREASURER TO DEPOSIT MONEY—PRESUMPTIONS.**

Where the action of the treasurer of a corporation in depositing its funds with another corporation of which he was an officer was not in violation of any statute, the presumption is that it was not in violation of the by-laws or regulations of the corporation, and the burden of proof rests upon it, when it alleges that the deposit was unauthorized.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1726–1737; Dec. Dig. § 432.\*]

**2. BANKRUPTCY (§ 345\*)—CLAIMS ENTITLED TO PRIORITY—FUNDS HELD IN TRUST.**

Where a bankrupt corporation had been a general depositary for the funds of a grocers' association of which its president was treasurer, its other directors having been told by him that such deposits were authorized by the association to be repaid on demand, it did not hold such funds as a special deposit in trust, but the association was a general creditor only, and not entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.\*]

Grosscup, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

For opinion below, see 159 Fed. 268.

Appellant filed a petition which her attorneys summarize as follows: "That Smith, Thorndike & Brown Company, a corporation, was duly declared a bankrupt June 24, 1907, and that for two years prior to May 25, 1907, one Ira B. Smith, the president of the said Smith, Thorndike & Brown Company, had also been the treasurer of the National Wholesale Grocers' Association of the United States; that the moneys of the Grocers' Association coming into the hands of Mr. Smith as such treasurer were deposited by him with the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Smith, Thorndike & Brown Company, and that said moneys so deposited were known to be and were treated as the moneys and credits of the Grocers' Association; that on or about the 25th day of May, 1907. Mr. Smith resigned as treasurer of the Grocers' Association, at which time the Smith, Thorndike & Brown Company had in its possession $2,156.30 belonging to said Grocers' Association; that said moneys came duly into the possession of the trustee appointed in said bankruptcy proceedings; and that on the 25th of May, 1907, appellant duly purchased from the Grocers' Association its said claim against the Smith, Thorndike & Brown Company."

The district Court, on consideration of the proofs, allowed the claim as an unsecured claim, without preference. In re Smith, Thorndike & Brown Co., 159 Fed. 268. The appeal is prosecuted on the theory that the relation between the Smith, Thorndike & Brown Company and the Grocers' Association was that of trustee and cestui que trust, and that the trust fund is in the hands of appellee as an officer of the bankruptcy court.

S. S. Gregory and Guy D. Goff, for appellant.

Jackson B. Kemper, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). The District Court found from the evidence that Smith as treasurer of the Grocers' Association was authorized by the association to place its funds with the Smith, Thorndike & Brown Company as a general deposit—that is, not as a special fund to be set apart for safe-keeping, but as a fund to be used and repaid as demanded—and that nothing was done with respect to the funds which was not contemplated by the parties. If the finding is correct, the legal conclusion that the only relation between the two companies was that of general debtor and general creditor is inevitable.

But even if the evidence is not sufficient to establish such finding affirmatively, we should consider that point unavailing for the following reason. Against appellant's prima facie case that moneys of the Grocers' Association, a corporation, passed from the hands of Smith as treasurer into the possession of and were used by the Smith, Thorndike & Brown Company, a corporation, of which Smith was president, appellee introduced evidence tending to prove that such use was approved by the president, the secretary, and the "executive part of the board of directors" of the Grocers' Association. But appellee failed to exhibit any provision in the charter and by-laws of the Grocers' Association, and any record of official action of its board of directors, either authorizing or forbidding its treasurer to deposit its funds with another corporation in which its treasurer was a stockholder and president. As the general law of the land does not prohibit the organization of corporations (or voluntary associations) with power through by-laws or action of directors to authorize treasurers to deposit the official funds with other corporations of which such treasurers are presidents, the lack of conclusive proof that the act of Smith as treasurer was authorized cannot be taken as proof that it was unauthorized. On the contrary, the lack of proof that Smith's act was in violation of his duty as treasurer as that duty was fixed by the Grocers' Association made it unnecessary for appellee to undertake to prove that Smith's act was authorized. The presumption is that men do not commit crimes or breaches of trust. The presumption is that if the act of the treasurer of any corporation or association does not violate

any statute of state or nation, neither does it violate the by-laws of the company or the resolutions of the directors. The Grocers' Association (in whose place appellant stands) cannot be permitted, in our judgment of the law and sound public policy, by merely charging that Smith's act as its treasurer in depositing its funds with the Smith, Thorndike & Brown Company, of which Smith was president, was unauthorized by it, to cast the burden upon Smith (or appellee) of proving that the act was authorized by resolution or by-law. Where a defendant has control of the proofs from which the liability for an act complained of might be established, and the plaintiff might be left remediless if the defendant were not required to produce the proofs, the defendant is sometimes subjected to an adverse assumption of fact by reason of his failure to bring forth the full proof from which nonliability would be established. But where, as here, the full proofs are in the plaintiff's hands, the reason for such a rule fails.

This is sufficient to require an affirmance. But even if by any possibility it could be held that Smith acted contrary to the by-laws or directions of the Grocers' Association, we would be obliged to affirm on the fact, as found by the District Court, that no part of the sum claimed ever found its way into the assets of the estate in the hands of appellee. And, further, the Smith, Thorndike & Brown Company never became holders of the fund as a special deposit or separate fund in trust, either by agreement or by reason of knowledge of or participation in Smith's (wrongfully assumed) betrayal of trust. The only evidence on this point is quite to the contrary, namely, that the board of directors (other than Smith) were told by Smith that he was expressly authorized by the Grocers' Association to let the Smith, Thorndike & Brown Company have the use of the money, repayable on demand.

The order is affirmed.

GROSSCUP, Circuit Judge (dissenting). I have no disagreement with the majority opinion, that, as between the depositor in banks and the depositee, it is contemplated that the deposit, if it be a general and not a special deposit, shall be used by the depositee, to be repaid when demanded; my insistence is that in no true sense of the word at all is the transaction between Smith, and Smith, Thorndike & Brown a "deposit," either special or general—that the real transaction was the personal utilization by Smith, for the private benefit of himself and his business associates, of the fund put into his possession as treasurer —a treatment of the fund in his hands that raises the reasonable inference that he was influenced as to the selection of whom should have its possession, not by the judgment of one who is seeking a place to deposit the trust funds, unbiased by interest of his own, as the cestui que trust had the right to expect, but who is influenced by his interest and opportunity for personal profit; and whatever such transaction may be called, it is not, in any true sense the act of a trustee in seeking merely the safe-keeping of the trust funds. It is, seems to me, this mistaken conception of what the real transaction is, that furnishes the real ground on which the majority opinion is built up.

Now what are the facts? The National Grocers' Association is an organization of grocers residing in all parts of the United States, for social, educational, and friendly aid purposes, solely. The Association is not one intended to bring to the Association, as such, any pecuniary profit. Its funds are not put into the possession of its officers, as are the funds of associations or corporations for profit, to be employed or utilized in venture or investment. The sole function of the officers of associations like this, besides determining the appropriation of funds for the purposes named, is to safely keep such funds; of all of which we can, I think, even in the absence of statutes, by-laws or resolutions of the association, take judicial notice.

Associations of this kind hold stated gatherings or conventions at different places throughout the country, each one attended probably by less than a majority of the membership; at which conventions officers are elected, and business relating to the purposes of the association transacted. It is not at these conventions, however, that the funds of the association are collected. The funds are collected by check of the individual members, sent from their respective homes to the treasurer, in pursuance of the regularly established association dues. Possibly the association might, at its stated meetings or conventions, in the absence of any prohibition thereon by charter or by-law, vote these funds into the hands of its treasurer, or one of its members, to be utilized by him in the private business of himself and his business associates, for his and their private benefit only. But this I doubt, in the absence of consent from the members whose contributions are to be affected, or of power contained in the charter or by-laws; for in the absence of such consent, or of such general power, it seems to me that the members who from their homes are sending in their checks to the treasurer have a right to believe, and do believe, that the funds are to be kept intact, not as capital to be put into private venture for the treasurer's benefit, but as a trust fund, in some regularly accepted bank or other depositary of funds that are used for the safe-keeping of moneys.

However, this question does not arise, for there is no pretense that the association, at any meeting, voted authority to Smith to use these funds in his business, or the business with which he was connected; nor is there any pretense that the officers of the association, at any meeting of themselves, so voted. All that the testimony discloses is that the president, the secretary, and what Smith called the executive part of the board of directors, "knew" that the fund was being deposited with Smith, Thorndike & Brown. This may have furnished Smith with a pretext to put these funds into the private business with which he was connected, but to my mind clearly, it is no "authority" for so doing. To show authority to a treasurer to use the funds in his own business and that of his associates, something more than knowledge or connivance on the part of the other officers must be shown; and in the absence of such authority, such use of the funds is a dereliction of the trust that the treasurer undertakes.

Now what is the relation of Smith, Thorndike & Brown to this dereliction of trust? The majority opinion says "that the board of directors, other than Smith, were told by Smith that he was expressly

authorized by the Grocers' Association to let the Smith, Thorndike & Brown Company have the use of the money repayable on demand." Let that be as it may, the evidence establishes further without question that at the time these funds were put by Smith into the possession of Smith, Thorndike & Brown, Smith was president of that corporation, and had a "general supervision of the affairs of the Company," and that these funds of the Grocers' Association came into the hands of Smith, Thorndike & Brown, with the knowledge of all its directors that they were the treasury funds of the Grocers' Association. And were Smith, Thorndike & Brown, Smith alone, or were Smith's knowledge—the knowledge of the man who was president and had general supervision of the affairs of Smith, Thorndike & Brown—to be imputed to Smith, Thorndike & Brown, that Company's use of funds, in the way they were used would be without authority, and in dereliction of Smith's duty to the Grocers' Association. Indeed, had Smith thus used these funds in a business that was his own entirely, or were Smith, Thorndike & Brown a copartnership instead of a corporation, Smith being a leading partner, there could, on the facts and principles of law stated, be no uncertainty of the right of the Grocers' Association to pursue the funds thus diverted into Smith's or the copartnership's hands.

What meritorious difference does it make that Smith, Thorndike & Brown is a corporation instead of a copartnership? Whether corporation or copartnership, the business got the benefit of the diversion— the use of money that did not belong there. Whether corporation or copartnership, the assets that came into the hands of the trustee in bankruptcy were increased by just what was added by these funds, thus diverted. Whether corporation or copartnership, the actual knowledge of Smith, and the knowledge actual and imputed of the others in interest, was the same. And whether corporation or copartnership, the place of Smith as having "general supervision of the affairs of the Company" was the same—at least it would not have been greater in the case of a copartnership than in the corporation. And where there exists, as the result of the diversion, such identity of benefit; such identity of increase to the assets coming into the hands of the trustee by the funds thus diverted added thereto; such identity of knowledge actual and imputed; and such identity of Smith's place as managing power, I, for one, am not ready to say that the entirely irrelevant fact, from a practical point of view, that in one case the business into which the diverted funds have gone happens to be incorporated, and in the other it is not, makes any difference upon the rights of the party to whom the funds belong, to pursue these funds to the place where they or their proceeds, may be found. In other words, I am not ready to say that the fact that the business that has the benefit of the funds is an incorporated business, standing alone, constitutes a good plea in bar against the equitable pursuit of such funds by the parties who otherwise would be entitled to them. And what the majority opinion means by saying that "no part of the sum claimed ever found its way into the assets of the estate in the hands of the appellee" I do not understand; for beyond any dispute, in either evidence or argument at bar, these funds went into the bank account of

Smith, Thorndike & Brown that was drawn upon by Smith, Thorndike & Brown in the payment of their obligations in the course of their business as grocers—these exact funds either being in the bank at the time the trustee took possession, or in the purchase money of the stock of goods of Smith, Thorndike & Brown that came into the possession of the trustee. Indeed, the bank account, and this stock of goods, together constituted, in the hands of the trustee, the assets that came into his hands for the benefit of creditors; and that such assets were larger by the amount of these treasury funds than they would have been had not the funds been so used, is one of the undisputed facts in the case, unless they were lost in outside ventures, of which there is no evidence, claim, or intimation in the entire record or argument.

The majority opinion turns on this point on the question on whom is the burden of proof. It treats the transaction as if it were nothing but a "deposit" by Smith in another corporation of which he was president (say a bank of which he was president) and then proceeds:

"As the general law of the land does not prohibit the organization of corporations (or voluntary associations) with power through by-laws or action of directors to authorize treasurers to deposit the official funds with other corporations of which such treasurers are presidents, the lack of conclusive proof that the act of Smith as treasurer was authorized cannot be taken as proof that he was unauthorized."

And on the premise assumed in that statement I have no dispute with the conclusion.

But as already pointed out, the premise is wrong. The use of these funds by Smith in the private business of Smith, Thorndike & Brown, and for their private benefit is not, on its face, a "deposit" such as the contributors to the fund had a right to expect—the selection of a depositee in accordance with the unbiased judgment of the treasurer. On the contrary, in my opinion, the transaction is, on its face, in the absence of authority from the cestui que trust, a clear dereliction of trust; and being so on its face, in the absence of authority from the cestui que trust, the burden is on Smith to show the "authority." The case of the members of the Grocers' Association does not turn upon whether there were or were not by-laws that prohibited Smith's conduct—their case would be just as strong in the absence of by-laws on that subject. Their case is made out on the face of the transaction. When as a member of some Bar Association I send my dues to its treasurer, I expect that he will deposit them with some institution for safe-keeping. And if through error in judgment in the choice of such institution the fund is lost, I have no ground to complain that there was a breach of trust. But I have the right to expect that that choice will be unbiased by any interest of his own—especially that the funds will not be used in his own and his associates' private business. And when they are so used—put into a business that is always a venture, and in this case was already failing—I have made out a case, I think, that on its face, in the absence of authority shown, is the case of a breach of trust. It is the defense of Smith, Thorndike & Brown that depends on whether such or like authority can be shown. And it is on them that the burden falls. But even were the

burden to be where the majority opinion places it, the order of the Court below dismissing the petition, ought not to be affirmed; justice would seem to me to require that in that case the party on whom the burden falls should be given an opportunity to put in the omitted evidence.