SCHILLINGER BROS. & CO., Appellant, v. BOSCH-RYAN GRAIN CO., JOHN A. GREEN, Intervener.

**Building contract:** ABANDONMENT: LIABILITY OF OWNER FOR WORK DONE. Under a building contract authorizing the contractor to discontinue the work after completion of certain portions, because of the owner's failure to pay an installment then due, the contractor is justified in abandoning the work upon the owner's refusal to make the payment and the owner becomes ·liable for that portion of the contract price then earned.

**Same:** PERFORMANCE: EVIDENCE. To recover upon a building contract the contractor must show compliance with its terms or a waiver of compliance by the owner. In the instant case the evidence is held to show compliance by the contractor entitling him to an installment of the contract price.

**•Same:** COMPLIANCE WITH CONTRACT IN QUALITY OF MATERIAL: EVIDENCE. In this case the contract provided for the erection of a concrete building composed of certain parts of cement, sand and crushed stone. The stone first used was found too large and a greater proportion of sand was substituted. This was done with the knowledge and consent of the owner, and it appeared that the material used was first class and in substantial compliance with the contract. The walls were not smooth but their strength was not thereby materially affected. *Held,* to show that the concrete as used was in compliance with the contract as to quality.

**Same:** MANNER OF CONSTRUCTION: WAIVER OF OBJECTION. Where the contract for the construction of a concrete building called for hollow walls to be thoroughly bonded with concrete, without specifying what portions were to be hollow, the owner, knowing the manner of bonding and making no objection thereto, could not complain thereof when sued on the contract for material and labor furnished.

**Same:** PLEADINGS: WAIVER. Under a general denial that work of construction was done according to contract, and a counterclaim

for failure to use the required kind and quality of material was pleaded, to which the contractor replied by pleading a waiver of such matters, the question of waiver was sufficiently raised.

**Same:** PAYMENT: REFUSAL: WAIVER: ESTOPPEL.   Where a demand for payment on a contract is made and refused on specified grounds, the party refusing to pay can not thereafter change his ground of refusal, but will be held to have waived all other grounds known to him at the time, and is thereafter estopped from refusing payment on account thereof.

**Same:** FAILURE OF CONTRACTOR TO GIVE BOND: FORFEITURE.   Where failure to give a contractor's bond was not the fault of the contractor, but negotiations for the same were in good faith pending at the time the owner breached the contract, a forfeiture of the contract by the owner could not be based on a failure to give the bond.

*Appeal from Linn District Court.*—Hon. J. H. Preston, Judge.

Thursday, October 28, 1909.

Affirmed on Tuesday, February 15, 1910.

This is a suit in equity, brought to recover for work done and material furnished in the construction of a concrete building to be used for a malting plant. The work and material were furnished under a written contract. The plaintiff also asked the foreclosure of a mechanic's lien thereon. The contract on which the suit was based, and under which the work was done, fixed the contract price at $72,000, to be paid in six equal installments as the work progressed. The first payment of $12,000 was to be made when the total walls, interior and exterior, had reached the height of fifteen feet above the top of the foundation walls, and one-sixth was to be paid on the completion of each twenty-five feet in height of all walls. The last installment was to be paid thirty-five days after the completion of the work. The contract also provided that,

should payments become past due, it was optional with the contractor to continue or discontinue the work until such payment was made. The contract also provided that the contractor should give a bond in the sum of $25,000 for the faithful performance of his contract, but the premium for said bond was to be paid by the owner. The petition alleged a failure of the defendant to make a certain payment which was claimed to be due, and that by reason of such failure on the part of the defendant the plaintiff had elected to discontinue work under the contract. The defendant denied liability, and filed a counterclaim for damages in the sum of $57,000. The plaintiff's claim as made in its pleadings was for $20,000, and this sum was practically allowed by the trial court. The intervener, John A. Green, filed a claim for a mechanic's lien, which was allowed by the trial court, and his lien established on the defendant's property. The defendant appeals from the judgment of the trial court in establishing the liens referred to, and in giving the plaintiff judgment for any amount.

C. J. Laybourn, Dawley & Wheeler, and Crissman & Sargent, for appellant.

Chas A. Clark and Daniel McCaskill & Son, for appellee.

SHERWIN, J.—There was a written contract between the parties for the construction of the buildings in question. It provided that there should be thirty-six rectangular bins in the storage house; that the bins in the workhouse should be as provided by the plans of the defendant; that the malthouse should contain certain germinating tanks, with necessary girders and columns to support the specified load intended, the central girders to have a span of twenty-two feet, with necessary angles for wind

bracing and tying together the walls of the building, the same to extend through the tanks at intervals of about twelve feet, as specified by the plans of the defendant. The specifications as to the kilnhouse related to the strength and reinforcement of the floors only. The contract provided: "All concrete to be of one part Portland cement to two parts sand and four parts crushed stone, or one part Portland cement and six parts suitable gravel for the purpose and of equal strength with stone, thoroughly mixed and carefully placed so as to secure a thorough bond with reinforcing metal." It specified the thickness of the interior walls in the storage house, and provided that such walls should be "thoroughly reinforced with steel straps fourteen inches apart on centers, the size of such straps to be sufficient to give one and forty-five-one-hundredths percent of the sectional area of the wall for two-thirds of the height of the wall." It provided that all exterior walls, and the party wall separating the storehouse and the workhouse from the malthouse and kilnhouse, and the cross wall between the malthouse and the kilnhouse should be hollow, "but thoroughly bonded with concrete, so that the air space shall be three inches, all of said walls to be a thickness of fifteen inches." The foregoing are all of the detailed specifications of the contract material to an understanding of the case, but the contract further provided that "the contractor will submit to the owner detailed drawings showing dimensions and arrangement of parts before work is commenced on the part in question, such drawing supplementing those of the Bosch-Ryan Grain Company." And, further, "All work is guaranteed to be first-class, and may be tested with the full load for which it was intended thirty days after its erection, or any time thereafter, and any failure or weakness shall be made good by the contractor, including any damages caused by such failure."

The plaintiff pleaded full compliance with the terms

of the contract up to the time of abandoning the work because of the defendant's failure to make the first payment according to the terms of the contract. The defendant in its answer and counterclaim denied that plaintiff had met the requirements of the contract, and said "that the work done by plaintiff on said structures is not first-class as required by said contract, and is not in compliance with the specifications of said contract, or with the drawings and plans and specifications referred to therein; that plaintiff has not used in said structures the kind or quality of material required by said contract, and has not used the material in the proportions as required by said contract; that plaintiff has failed and neglected to furnish any bond for the performance of said contract as required thereby." With reference to the plaintiff's abandonment of the work the defendant pleaded "that, upon plaintiff making demand for the first installment under the contract, defendant denied that said installment, or any part thereof, had been earned or was due, and thereupon an oral agreement was made between plaintiff and defendant whereby defendant agreed to pay the first installment upon condition that plaintiff would produce and furnish to defendant receipted bills for the material purchased by plaintiff for said structures, which the plaintiff agreed to do; and under said oral agreement, and pursuant thereto, the defendant made the said payment of $5,000 to plaintiff, and plaintiff has wholly failed and refused to produce or furnish to defendant any receipted bills for such material, or any other evidence of payment therefor as agreed upon." It will be noticed that in its answer proper the defendant did no more than to deny generally that the work had been done according to the contract, while in its counterclaim it specified wherein there had been a failure in that respect, to wit, "that plaintiff has not used in said structure the kind or quality of material required by said contract, and

has not used the material in the proportions as required by said contract."

By the terms of the contract the plaintiff had the right to discontinue work thereunder if payments were not made as agreed upon. And if the plaintiff had earned the first

1. BUILDING
CONTRACTS:
abandonment:
liability of
owner for
work done.

installment when it discontinued work on the 8th day of July, it was justified in so abandoning the contract, and the defendant is liable under the contract for the proportionate share of the contract price earned by the plaintiff at such time.

The first payment was due when "the total walls, interior and exterior," had reached the height of fifteen feet above the top of the foundation walls. The evidence shows,

2. SAME:
performance:
evidence.

without serious conflict, that the walls contemplated by this provision of the contract had been built much higher than fifteen feet at the time of the demand for such payment. While it is said that some of the bin walls were not then at that height, it is quite clear from the nature thereof, and from the construction placed on that part of the contract by the parties themselves, that they were not the walls required to be built fifteen feet high before a payment became due. Indeed the appellant's own contention as to this matter shows there is nothing in the claim. It says that the malt bins, which were vats sixty feet long by over ten feet wide, there being two such vats, required on each of the seven floors, were to be six and one-half feet high and in two tiers of seven each. They were to be suspended on girders, and were in no manner connected with the foundations or floors. They were simply large tubs made of concrete, and were evidently no part of the interior walls. Furthermore, when the first payment was demanded, and $5,000 thereof paid, no objection was made that the walls were not as high as required. The only objection then made was that receipted bills for material were not pro-

duced. The plaintiff sued on the contract; and, to be entitled to a recovery thereunder, it must show a substantial compliance with the terms thereof, or a waiver of such compliance on the part of the defendant.

The appellant says that the structure did not comply with the requirements of the contract because the steel was improperly placed in the walls, that the hollow walls called for were not made hollow, and that the whole work showed such signs of carelessness and inefficiency on the part of the contractors as to make it far from a first-class or workmanlike job. Specific complaint is made of the quality of the steel used and of the manner of placing it. It is sufficient to say in regard to such complaints that the defendant's own expert witnesses show that no fair criticism can be made as to these two items. The evidence does not sustain the claim that the concrete used in the construction of the walls was not the quality agreed upon. It is true that the crushed stone first used was found to be undesirable because of its large size, and that a change was made so that more sand was used. But such change was made with the knowledge and consent of the defendant, and the greater weight of the evidence shows that the material which went into the walls was first-class, and in substantial compliance with the contract. That the walls were not as smooth and plumb as they should have been to make a first-class job in appearance may readily be admitted. But the weight of the evidence shows that their strength was not thereby materially affected, and that the few offsets which were apparent were very short, and affected only the appearance of the walls. The method of carrying up the walls is complained of, but the evidence fails to show any defect in the walls on account thereof. There were a few exterior voids, but they affected the appearance of the walls, and not their strength, according to the weight of the evidence.

3. SAME:
compliance
with contract
in quality
of material:
evidence.

There is evidence tending to sustain the claim that the walls were not made hollow as required by the contract, but, however this may be as a matter of fact, and it is

**4. Same: manner of construction: waiver of objection.** seriously disputed, strict compliance with that, as well as with other requirements of the contract, was waived by the defendant, as we shall hereinafter show. While the contract called for hollow walls, it also provided that the same walls should be thoroughly bonded with concrete. What portions should be hollow, and what occupied by bonding concrete, is nowhere specified, and if the manner of bonding was known to the defendant, and permitted without objection, it is now in no situation to complain thereof.

We now come to the question of the defendant's waiver and the estoppel based thereon. The appellant contends that this question should not be considered because

**5. Same: pleadings: waiver.** no waiver is pleaded, but we think the pleading sufficient to fairly present the question. It will be remembered that the appellant made no specific objection to the manner of the plaintiff's performance of the contract in its answer proper, and that the specific complaints were first made in its counterclaim. To this the plaintiff replied, pleading a waiver as to such matters. This we think sufficient to present the question.

The evidence is not uncertain as to the fact that Mr. Bosch was present practically all of the time during the construction of the work in question, and was entirely

**6. Same: payment: refusal: waiver: estoppel.** familiar with it in all of its stages of progress. He made several written complaints of the way in which it was being done, and all this before the payment of $5,000 was made on the 7th day of July. Yet on said day, when the defendant was called upon for the whole of the first payment, no objection was made to any of the work. The only ground upon which such full payment was refused was because receipted bills for material were not fur-

nished by the plaintiff. Bosch himself testified that he paid $5,000 upon condition only that they be produced, and that plaintiff agreed to furnish them. Where a demand is made for payment under a contract, and such payment is refused upon a specified ground, and litigation results therefrom, the party so refusing to pay can not afterwards change his ground. He thereby waives all other grounds known to him at the time, and is estopped thereafter from relying thereon. *Milling Co. v. Ins. Co.,* 127 Iowa, 314; *Donley v. Porter,* 119 Iowa, 545; *Hawes v. Swanzey,* 123 Iowa, 54. At the time of this payment and specific objection, the defendant had full knowledge of the manner of the construction of the buildings and the material used therein. The only thing that it could not know at that time was whether when completed the structures would stand the test provided for in the contract. But time was given for such test in the contract itself, and all payments, except the last, were to be made notwithstanding the test requirement. In addition to this the contract expressly provided that "any failure or weakness shall be made good by the contractor." Regardless, however, of the question of the defendant's waiver of the completed condition of the buildings, we are of the opinion that the preponderance of the evidence shows that the structures so far as completed are of undoubted ultimate strength and sufficiency.

The evidence does not sustain the appellant's contention that the plaintiff through Mr. Hoyt agreed to furnish receipted bills, hence there was in fact no condition on which the $5,000 payment was made.

The contract also provides that "the contractor is to give bond in the sum of twenty-five thousand dollars for the faithful performance of this contract, the premium for said bond to be paid by the owner." The bond was never given, though it was the subject of negotiation for some time after the work was well along. Mr. Bosch seems

to have made application for a bond, and agreed to pay the premium thereon. The agent of the bonding company then made out an application for the bond to his company, and sent it to the plaintiff in Chicago. The application, however, provided that plaintiff was to pay the premium, and on account thereof it was returned to the agent. A second application was then sent to plaintiff with the statement that the Bosch-Ryan Company would pay the expense thereof. This application was signed, and returned to the agent, who took it to Mr. Bosch, and he filled out one or two answers to questions. All was then satisfactory, except that the bonding company required the Bosch-Ryan Company to sign an additional agreement that they would pay the premium before the bond was issued, and this Mr. Bosch would not do. Negotiations were then entered into by Bosch with another agent, and they were still pending when the plaintiff discontinued work on the 8th of July. It appears, therefore, that a bond was not furnished through no fault of the plaintiff, and a forfeiture of the contract can not be based on the facts appearing here.

7. SAME: failure of contractor to give bond: forfeiture.

After a very careful re-examination of the entire record, we reach the conclusion that the judgment of the district court should be *affirmed.*