Fletcher, etc., Trust Co. *v.* American State Bank—196 Ind. 118.

FLETCHER SAVINGS AND TRUST COMPANY ET AL. *v.*
AMERICAN STATE BANK OF LAWRENCEBURG.

[No. 24,149.    Filed April 23, 1925.]

1. TRUSTS.—*As against trust funds appropriated by bank in payment of indebtedness of depositor the one who prays for judgment has burden of supporting it.*—Where trust funds were deposited by an insolvent in his personal account with a bank, which account was later appropriated by the bank to the payment of insolvent's indebtedness to it, so that none of it came into the hands of a receiver appointed for the insolvent, the rule shifting to the receiver the burden of showing that such funds did not come into his hands is not applicable, but the rule that one who prays for judgment has the burden of proving the facts which will support it is applicable.    p. 129.

2. RECEIVERS.—*Trust funds coming into receiver's hands not necessarily impressed with trust if obtained by compromise.*—The fact that a receiver recovered a substantial sum by way of compromise of a suit against the directors of an insolvent investment company for negligence in permitting misappropriation of its funds does not sufficiently show that funds in the possession of the insolvent impressed with a trust came into the receiver's hands, where such litigation was settled by compromise for an amount less than the aggregate of all the choses of action sued on.    p. 130.

3. APPEAL.—*Inferences not indulged in favor of special finding.*—In reviewing a ruling based on a special finding on appeal, inferences in favor of the finding will not be indulged.    p. 130.

4. RECEIVERS.—*Burden of showing a constructive trust in funds in receiver's hands is upon cestui que trust.*—In order to create a constructive trust in funds in the hands of a receiver, the funds must be traced into his possession and, if commingled with other assets of the estate, it must be shown that they were received by him in such form as to be impressed with such trust at the time they were transferred from the constructive trustee to the receiver, and the burden of showing such a condition is on the *cestui que trust* or the ones who seek such priority.    p. 130.

5. TRIAL.—*Motion to modify by striking out part of special finding not authorized, but remedy is by motion for new trial.*—A motion to modify a special finding by striking out part thereof is not authorized by any rule of practice, but if the facts found are not supported by the evidence, the proper remedy is a motion for a new trial on the ground that the facts found are not sustained by sufficient evidence. . p. 132.

Fletcher, etc., Trust Co. *v.* American State Bank—196 Ind. 118.

6. EVIDENCE.—*Supreme Court will take judicial knowledge of existence of other courts and their jurisdiction.*—The Supreme Court will take judicial knowledge of the fact that there is in Marion county a superior court of co-ordinate jurisdiction with the circuit court and having jurisdiction of actions on choses of action, and can know, therefore, that an action by a receiver appointed by the circuit court against defendants who were not parties to the action in which the receiver was appointed to recover on choses of action belonging to the estate was separate and distinct from the proceeding in which the receiver was appointed. p. 133.

7. EVIDENCE.—*A court appointing a receiver will not take judicial knowledge of separate action by receiver in same court.*— A court appointing a receiver would not take judicial knowledge of an action by the receiver in the same court against the directors of the corporation for which the receiver was appointed, as the action was a separate and distinct proceeding from that of the receivership and the parties to the two proceedings were not the same. p. 133.

8. EVIDENCE.—*Judicial knowledge of facts capable of proof does not always dispense with proof.*—Generally, judicial knowledge of a fact dispenses with its proof, but the rule does not extend to all matters of fact, for, while a court may take judicial knowledge of all matters of fact, it is not bound to do so, and, in fact, should exercise extreme caution in taking judicial knowledge of facts susceptible of proof, but should require the introduction of evidence in support of same. p. 134.

9. EVIDENCE.—*Court will not take judicial knowledge of another proceeding in same court.*—A procedure, suit or action in same court relied on by a party seeking to sustain a finding in his favor, though proper matter of evidence to be considered in making a finding, is not subject to judicial knowledge without formal introduction in evidence. p. 135.

10. EVIDENCE.—*Court will not as a rule take judicial knowledge of another former action in same court.*—As a general rule, a trial court will not take judicial knowledge of another action or proceeding which has been prosecuted and tried before it. p. 135.

11. EVIDENCE.—*Court will not take judicial knowledge of another action or proceeding in same court after refusing proof thereof.*—A trial court cannot refuse to receive proof of the records in another action before it and then take judicial knowledge of the fact that certain matters were adjudicated in such case. p. 136.

12. APPEAL.—*Exclusion of evidence in receivership proceeding considered and held harmless.*—In a proceeding in a receiver-

ship to determine the priority of appellee's claim, the exclusion of offered evidence to show that the only cash that came into the receiver's hands was exhausted in the payment of other creditors whose claims had been decreed priority and paid by order of the court did not harm the appellant where the appellee was not claiming priority from that fund.  p. 136.

From Marion Circuit Court (29,530); *Harry O. Chamberlain,* Judge.

Proceeding by the American State Bank of Lawrenceburg, Indiana, against the Fletcher Savings and Trust Company and another trust company as receivers of the German Investment and Securities Company, to have the priority of its claim determined. From an interlocutory order allowing such priority, the receivers appeal. *Reversed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert L. Rabb* and *Frank B. Ross,* for appellant.

*Estel G. Bielby, James M. Ogden* and *H. Nathan Swaim,* for appellee.

TRAVIS, C. J.—This is an appeal from an interlocutory order, which allowed the claim filed by appellee with appellants as receivers of the German Investment and Securities Company, for certain moneys belonging to appellee and which were misappropriated by said German Investment and Securities Company, with priority of payment over the claims of the general creditors of the German Investment and Securities Company.

For many years prior to the date of the appointment of these receivers, to wit: July 15, 1918, the German Investment and Securities Company was engaged in the lending of money upon, and acting as trustee under, mortgages of real estate, the selling of mortgage bonds and notes, and collecting and remitting sums of interest and the principal thereon. In transacting such business, the German Investment and Securities Com-

pany deposited moneys received by it as trustee or otherwise in some one or more bank accounts maintained by it in the Continental National Bank, the Fletcher American National Bank, the Indiana National Bank, and the Union Trust Company, all of Indianapolis, Indiana. All moneys paid out by said company, either in payment of its debts, or to augment its assets, or otherwise, were paid out by means of checks drawn upon such accounts.

On September 10, 1915, Karl and Magdelena Kramer made, executed, and delivered one certain real estate mortgage bond, numbered 583, to the German Investment and Securities Company, wherein they promised to pay the German Investment and Securities Company, trustee, or bearer, the principal sum of $1,000, due five years after date, with interest from date at six per cent. per annum, payable semi-annually, negotiable and payable at the Fletcher National Bank of Indianapolis, Indiana. To secure the payment of this bond, the makers thereof made, executed, and delivered to the German Investment and Securities Company, trustee, their certain mortgage of certain real estate owned by them, which was duly recorded in the office of the recorder of Marion county, Indiana.

On March 11, 1916, Irene Bowman Ardern made, executed, and delivered one certain real estate mortgage bond, numbered 627, to the German Investment and Securities Company, wherein she promised to pay the German Investment and Securities Company, trustee, or bearer, the principal sum of $1,000, due five years after date, with interest from date at six per cent. per annum, payable semi-annually, negotiable and payable at the Fletcher National Bank of Indianapolis, Indiana. To secure the payment of this bond, the maker thereof made, executed and delivered to the German Investment and Securities Company, trustee, her certain mortgage of certain real estate owned by her and Edward I. Ar-

dern, which was duly recorded in the office of the recorder of Marion county, Indiana.

On October 2, 1916, Dora Meyer Kottlowski made, executed and delivered two certain real estate mortgage bonds, numbered 682 and 683, to the German Investment and Securities Company, wherein she promised to pay the German Investment and Securities Company, trustee, or bearer, the principal sum of $1;000 on each of said bonds, due five years after date, with interest from date at six per cent. per annum, payable semiannually, negotiable and payable at the Fletcher National Bank of Indianapolis, Indiana. To secure the payment of these bonds, she, with her husband, Ernest A. Kottlowski, made, executed and delivered to the German Investment and Securities Company, trustee, their certain mortgage of certain real estate owned by them, which was duly recorded in the office of the recorder of Marion county, Indiana.

The German American Bank of Lawrenceburg, Indiana, which duly changed its corporate name to American State Bank of Lawrenceburg, Indiana, the appellee, on October 17, 1915, in good faith, purchased for value from the German Investment and Securities Company, trustee, the mortgage bond numbered 583, and still holds the same. The makers of such bond, Karl and Magdelena Kramer, did not know of such purchase by appellee until some time subsequent to March 8, 1918. The German Investment and Securities Company, trustee, collected interest from time to time as it fell due upon this bond numbered 583, and until July 15, 1918, and unknown to the makers of the bond, remitted the interest so collected to the appellee.

On March 8, 1917, Karl and Magdelena Kramer paid the sum of $700, and on March 8, 1918, paid the sum of $300 to the German Investment and Securities Company, trustee, on the principal of said bond numbered

583, but the said trustee did not transmit said sums so paid by the makers of said bond to the appellee, but did, on March 9, 1917, and March 9, 1918, respectively, deposit said sums of money so paid in the said Fletcher American National Bank, and in said Indiana National Bank, respectively, in each instance to the credit of the German Investment and Securities Company, which said deposits were unknown to the makers of the bond and the appellee. On the date last mentioned, to wit: March 9, 1918, the German Investment and Securities Company, by its president, duly released of record the mortgage which secured the payment of said bond numbered 583.

On April 7, 1916, said German American Bank, under its changed name, appellee herein, in good faith, purchased for value from the German Investment and Securities Company, trustee, the bond numbered 627, and still holds the same. The maker of such bond, Irene Bowman Ardern, did not know of such purchase until subsequent to March 11, 1918. The German Investment and Securities Company, trustee, collected interest from time to time as it fell due upon this bond numbered 627, and until July 15, 1918, and unknown to the maker of the bond, remitted the interest so collected to appellee.

March 10, 1917, Irene Bowman Ardern paid $100, and March 11, 1918, she made the further payment of $100 to the German Investment and Securities Company, trustee, both of which payments were on the principal of said bond numbered 627. But the said trustee did not transmit said sums so paid by the maker of said bond to the appellee, but deposited said sums so paid on said bond to it, as trustee, in the said Indiana National Bank, on March 13, 1917, and March 12, 1918, respectively, following the payments so made.

On November 6, 1916, said German American Bank,

under its changed name, appellee herein, in good faith, purchased for value from the German Investment and Securities Company, trustee, said mortgage bonds numbered 682 and 683, and still holds the same. The maker of said bonds, Dora Meyer Kottlowski, did not know of such purchase by appellee until some time subsequent to October 3, 1917. The German Investment and Securities Company, trustee, collected interest on said bonds as it matured from time to time, until July 15, 1918, and unknown to said maker of said bonds, transmitted such sums of interest so paid by said maker to the German American Bank, which, under its changed name, is appellee herein.

On October 3, 1917, said Dora Meyer Kottlowski paid to the German Investment and Securities Company, trustee, $2,000 as payment of the principal of each of the bonds numbered 682 and 683. The trustee, after the receipt of said payment, did not transmit the same so paid to the appellee herein, but, on October 9, 1917, deposited said sum of $2,000 in the said Fletcher American National Bank to the account of German Investment and Securities Company. Appellee did not know that such payment had been made; and neither it nor the maker of the bonds knew that the sum so paid had been deposited to the individual account of the German Investment and Securities Co. On the day that the payment of said sum as the principal of the bonds numbered 682 and 683 was paid, the mortgage which secured said bonds was duly released of record by the president of the German Investment and Securities Company. During all of the time covering all of the transactions herein mentioned, and continuously thereafter, the German Investment and Securities Company was insolvent, which fact was known by its officers; but which fact was continuously concealed by the company from said Karl and Magdelena Kramer, Irene

Bowman Ardern, and Dora Meyer Kottlowski, as well as from the appellee; and said company and its officers did not inform, but continuously concealed from, the appellee the fact that each of such said payments had been made, and that each of the mortgages had been so released of record. The appellee never received any of the sums of money paid upon the principal of each of the aforesaid bonds, or any part thereof, but the German Investment and Securities Company deposited all said sums of money to its own use, as stated. The appellee had not at any time authorized the German Investment and Securities Company to receive, retain, or mingle such payments of money to it.

The German Investment and Securities Company on July 15, 1918, the date of the appointment of the receivers for it, had on deposit to its credit the following sums of money in each of the banks named, viz.: The Continental National Bank, the sum of $508.86; the Fletcher American National Bank, the sum of $1,303.62; the Indiana National Bank, the sum of $1,403.86; the Union Trust Company, the sum of $163.47; which said banks, on said day of the appointment of the receivers, each applied the sum of money then on deposit with it upon existing indebtedness due from the German Investment and Securities Company to said banks respectively. The Continental National Bank applied the deposit of $508.86 on the insolvent indebtedness of about $1,000; the Fletcher American National Bank applied the deposit of $1,303.62 on the insolvent indebtedness of about $5,000; the Indiana National Bank applied the deposit of $1,403.86 on the insolvent indebtedness of about $5,000; the Union Trust Company applied the deposit of $163.47 on the insolvent indebtedness of about $18,000. None of the sums on deposit in any of the banks as stated, or any part thereof, or any part of the bank accounts or credits of the insolvent German

Investment and Securities Company came into the possession of the receivers. The only assets of such insolvent that came into the possession of the receivers were real estate, personal property, of which there was cash or its equivalent in the sum of $1,267.86, and no more; stocks and bonds, and choses in action.

The aggregate amount of all claims filed in the receivership proceedings is in excess of $234,000, of which claims there had been allowed by the receivers as general claims, a total aggregate in amount $174,448.77; that of such claims filed, a number exceeding in amount the sum of $60,000, asserted priority of payment over the general claims. The assets of the receivers are insufficient to pay all claims in full that have been filed, but such assets were more than sufficient to pay all claims that were asserting priority, as well as all the costs and expenses of the receivership. Karl and Magdelena Kramer, Irene Bowman Ardern, and Dora Meyer Kottlowski, had each assigned all his or her interest in, and claims against, the insolvent German Investment and Securities Company and its receivers, on account of the transactions, to the appellee.

The foregoing is a narrative of the complete findings of facts by the court in the trial of appellee's objections and exceptions to appellants' report, except finding No. 19, which is set out *in haec verba.* "Finding Number 19. That among such choses in action was one based in part upon the negligence of the directors of the said German Investment & Securities Company whereby and through which the misappropriation and misapplication of the funds referred to in findings Nos. 7, 8, 11, 12, and 14 herein, totalling the sum of $3,200, was made possible and was consummated, all as set forth in a certain suit brought against said directors by the receivers of German Investment & Securities Company,

wherein a judgment was obtained by said receivers against said directors on February 24, 1921, in the sum of Three Hundred Forty-Nine Thousand, Five Hundred Ten and sixty-six hundredths dollars ($349,510.66), and which said judgment was compromised and settled for the sum of One Hundred Thirty Thousand Dollars ($130,000), and that the same was paid to and received by said receivers on May 5, 1921, all under the authority, direction and order of this court, as shown by the records and entries of the court."

Appellee's claim, which consisted of $3,200 principal and $73.82 interest, was filed as a claim against the insolvent estate with the receivers. The receivers made a report to the court in which the claim of appellee was allowed as a general claim without priority. To this report, the appellee filed objections, which formed the issue to be tried. Upon the finding of facts, the court stated its conclusions of law, that the German Investment and Securities Company was indebted to the claimant in the sum of the principal and interest, aggregating $3,273.82, with priority of payment over claims of general creditors. The receivers excepted to the conclusions of law, and also moved to modify the special finding No. 19, which motion was overruled.

Appellants' motion for a new trial, for the reasons that the findings of the court are not sustained by sufficient evidence and are contrary to law, and error claimed in the exclusion of certain evidence offered by appellant, was overruled. The interlocutory order which followed was that the report of the receivers, in so far as it allows appellee's claim as a general claim, be disapproved, and that the claim is allowed in the sum of $3,273.82, with priority of payment over claims of general creditors. Appellants appeal and assign as errors that the lower court erred (1) in its conclusions

of law, (2) in overruling the motion to modify special finding of facts, and (3) in overruling the motion for a new trial.

Appellants' first proposition is that the trial court erred in its conclusion of law, for the reason that appellee has not traced its moneys into the assets which came into the hands of the receivers, and which fund is to be charged with the repayment of the trust moneys that were misappropriated by the insolvent. Under this proposition, appellants acknowledge that appellee, being the beneficial owner of the moneys so wrongfully misappropriated, has a right in equity to pursue and recover such money, provided it can find it and put its hands on it; but that it is not necessary that the identical moneys be traced into the hands of appellants as such receivers. It is a sufficient tracing that some specified fund or property is located in the possession of the receivers into which such moneys went, or for which they were substituted, or that such moneys swelled the assets of the receivers. To the contrary, appellee insists that it has sufficiently traced its moneys into the general assets of the insolvent, by payment of such money to the insolvent in payment of such principal and interest, which money insolvent confused and mingled with its own; and that such tracing even though the moneys of the insolvent and appellee were so commingled in the personal bank accounts of the insolvent, which were appropriated by the creditor banks of insolvent and applied in partial payment of insolvent's debts, the burden was shifted to appellants to show that appellee's money is not represented in the general assets of said receivership estate now in the hands of appellants. To sustain such proposition, appellee cites: *Indiana Trust Co.* v. *International, etc., Assn.* (1905), 165 Ind. 597, 76 N. E. 304; *Reserve Loan Ins. Co.* v. *Dulin, Rec.* (1922), 82 Ind. App.

630, 135 N. E. 590; *City of Lincoln* v. *Morrison* (1902), 64 Nebr. 822, 90 N. W. 905, 57 L. R. A. 885; *Smith* v. *Mottley* (1906), 150 Fed. 266, 80 C. C. A. 154; *Grund* v. *First Nat. Bank* (1920), 209 Mich. 613, 177 N. W. 299; *Widman* v. *Kellogg* (1911), 22 N. D. 396, 133 N. W. 1020, 39 L. R. A. (N. S.) 563.

In the majority of the cases cited, it will be found that the trust funds in question were in the hands of the insolvent or bankrupt at the time of the ap-

1. pointment of the assignee, receiver, or trustee in bankruptcy, as the case might be; and that such assets came into the hands of such officers of the court impressed with the character of the trust when such funds were so taken into custody by such officers. Under the facts and circumstances as shown by these cases, they rely upon the rule that the burden of proof is upon the owner of such trust funds to prove that his property came into the general assets of such insolvent or bankrupt, and, when this had been done, the burden shifted to the wrongdoer to prove that such property was not contained in the assets in its hands. In relation to such shift of the burden of proof, the receivers stand in the position of the insolvent. This rule is not applicable in the case at bar, for the reason that the special finding of facts shows that such deposits of the trust funds by the insolvent with its personal deposit accounts in the several banks were appropriated by such banks and applied in payment of debts of the insolvent to the banks; and that such sums which constituted the trust funds or any part thereof did not come into the hands of these receivers. If the moneys so commingled with insolvent's moneys in its personal bank accounts had not been appropriated by the several banks, but were remaining in the banks and not subject to such appropriation by the several banks in pay-

ment of insolvent's debts, such deposits would become a part of the general assets of the insolvent estate in the hands of the receivers; or if such trust moneys had been converted into property now represented by the assets of the insolvent estate in the hands of the receivers, appellee would be entitled to the allowance of his claim with priority of payment over claims of general creditors. The findings do not disclose that these trust funds were ever converted into any other property, but that such trust funds have lodged permanently with the creditor banks in payment of debts which otherwise might have been filed as general claims against this estate. The presumption will not be indulged that the German Investment and Securities Company withdrew moneys from its several bank accounts which might be impressed with the trust, and invested the same in securities or other kinds of property, which also, through such mutation, became impressed with the trust, and that such property is now a part of the assets of the insolvent estate in the hands of the receivers. For it would be equally as just to presume that such moneys, if withdrawn from the several bank accounts by the German Investment and Securities Company before insolvency, had been spent for its personal use or in payment of its debts, to the complete loss of the identity of the same. The general rule of law that the one who prays for judgment has the burden of proving the facts which will support it, is applicable to this case, and was applied in the opinion in the well considered case of *Windstanley* v. *Second National Bank of Louisville, Kentucky* (1895), 13 Ind. App. 544, 550, 41 N. E. 956.

Appellee further maintains that the recovery of the sum of $130,000, under the circumstances, and as

2-4. shown by finding No. 19, sufficiently traces such trust moneys into the general assets of the in-

solvent to charge such fund so recovered with the amount of trust money so misappropriated, impressed with a trust which would give priority of payment of its claim over the claim of general creditors. Finding No. 19, which is the only part of the special finding relating to the point raised, does not find it as a fact that the judgment recovered in the suit upon the several choses in action was for the full amount of such choses in action. The court cannot know such fact from the finding unless it presumes such to be a fact. The judgment was not paid in full. It was compromised by the payment of $130,000. This sum as compensatory damages is not equal to the aggregate amount of all the choses in action upon which suit for damages resulted in the judgment and such compromise payment of $130,-000. It would be a violent presumption to hold, in the absence of such fact in the special findings, that such compromise payment of the judgment in full covered *in toto* the choses in action representing the trust funds here in question and only partially as to all the other choses in action sued upon in the same suit. It was incumbent upon appellee to prove, and the special findings to show, such facts, and not upon the receivers. Inferences will not be indulged in favor of a special finding. *Windstanley* v. *Second National Bank of Louisville, Kentucky, supra.* By the great weight of authority, it is the rule that the trust property must be traced into the possession of the one sought to be charged as a constructive trustee and to be lodged with such trustee in the assets of his estate in a form sufficient to be impressed with such trust at the time when such assets are transferred by operation of law from the constructive trustee to the receivers. The burden of showing such a condition of the estate was upon the *cestui que trust*, or the ones who seek such priority. The trial court erred in its conclusion of law. *Wind-*

*stanley* v. *Second National Bank of Louisville, Kentucky, supra; Slater* v. *Oriental Mills* (1893), 18 R. I. 352, 27 Atl. 443; *In re Smith, Thorndyke & Brown Co.* (1908), 159 Fed. 268; *Id.* 170 Fed. 900, 96 C. C. A. 76; *City Bank of Hopkinsville* v. *Blackmore* (1896), 75 Fed. 771, 21 C. C. A. 514.

There is no evidence in the record in support of special finding No. 19, which is the basis of appellants' motion to modify the special findings of facts by the trial court by striking out said finding No. 19. This attempted practice has been before the courts in this state several times, and it has been decided that a motion to strike out parts of the special findings of facts is not sustained by any rule of practice, but that the remedy is by motion for a new trial for the cause that the facts are not sustained by sufficient evidence. Appellant takes advantage of the method of presenting the same question by alleging as one of the causes for the new trial that the special findings of fact are not sustained by sufficient evidence. *Sharp* v. *Malia* (1890), 124 Ind. 407, 409, 25 N. E. 9; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 241, 64 N. E. 860; *Conner* v. *Andrews Land, etc., Co.* (1904), 162 Ind. 338, 348, 70 N. E. 376; *Wolverton* v. *Wolverton* (1904), 163 Ind. 26, 30, 71 N. E. 123.

The overruling of the motion for a new trial under the third assigned error brings into question the sufficiency of the evidence to support the special finding of facts. Special finding of fact No. 19 is challenged for the reason that there is no evidence in the record to support this finding. Appellee offered to prove in answer to the question to which an objection had been sustained: "That on November 13, 1918, said Receivers instituted a certain action, being Cause No. 30021 in the Circuit Court of Marion County, Indiana, against certain directors of said German Investment

and Securities Company, to wit: Philip J. Hauss, Frank H. Rupert, George Seidensticker, August Woerner, Louis Meier, Gottfried Monninger, William Meyer, Ferdinand A. Mueller, Christopher Bernloehr, and Herman Rinne for damages for negligence of said defendants in the performance of their duties as directors of said German Investment & Securities Company; that in the complaint in said cause it was charged, among other things, that said defendants were negligent in that they permitted the misappropriation of certain moneys, including sums aggregating $3,200 to which the Bank of Lawrenceburg—which is the claimant herein—was entitled; that evidence was heard in said cause, and on February 22, 1921, a verdict was returned for plaintiffs herein in the sum of $349,501.66 against all of the said above named directors except said Herman Rinne and said Christopher Bernloehr; that thereafter judgment was rendered on said verdict; and that thereafter on, to wit: May 5, 1921, said judgment was compromised in full by the payment of the sum of $130,000 thereon to said Receivers."

The foregoing was the only offer of proof of any facts to sustain finding No. 19. As shown by the offer to prove, the receivers brought suit in tort against certain persons who were directors of the insolvent, based upon choses in action, in the same court in which the receivership proceeding is pending, and recovered judgment, settled the same, all as is stated in the offer to prove.

Appellee contends that all of the facts stated in finding No. 19 were facts of which the lower court could and did take judicial notice; and grounds such 6, 7. action by the court upon the rule that a court will take judicial knowledge of all proceedings in the cause of action now pending, and that the facts concerning the suit by these receivers against the per-

sons who were directors of the insolvent, were not facts
in another proceeding in the same court, but that such
facts were in the same proceeding in the same court.
The action brought by the receivers in suing on the
choses in action might have been brought in any other
court of co-ordinate jurisdiction.  This court will take
judicial knowledge that there is a superior court of
Marion county, Indiana, of co-ordinate jurisdiction
with the trial court in this case, over the subject-mat-
ter and parties in suit upon the choses in action.  Be-
cause the receivers elected the trial court herein as the
forum in which to bring its action does not, of itself,
make this particular suit a part of the proceeding under
which the receivers were appointed.  The record does
not disclose that the defendants in the suit upon the
choses in action were made defendants in the proceed-
ing to institute the receivership under which these re-
ceivers were appointed.  The proceeding for a judgment
in damages upon the choses in action, because it was
brought in the same court, was in no way nurtured or
controlled by the "parent proceeding," so called for the
benefit of this statement.  The jurisdiction of all pos-
sible suits in relation to real estate, bonds, notes, debts,
was not in this trial court, unless it also had, by virtue
of law, jurisdiction over the persons who might be par-
ties to such suits.  Reason compels the conclusion that
the proceeding brought by these receivers upon the
choses in action was a separate and distinct proceeding
from that of the receivership in which these receivers
were appointed; and that the parties to the two proceed-
ings were not the same.

Generally, judicial notice of certain subjects dispenses
with their proof, but such rule does not extend
always to matters of fact, for even though the
8.  court may, it is not bound, to take judicial notice
of all matters of fact of which it may take no-

tice. It lies within the discretion of the court. Matters of fact may be subject to a reasonable doubt as to their existence, and inasmuch as judicial notice of a fact takes the place of proof thereof, and is of equal force as the proof, the court should exercise extreme caution in taking judicial notice of facts subject to proof without introduction of evidence in support of the same. *Hunter* v. *New York, etc., R. Co.* (1889), 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; *Green* v. *Lineville Drug Co.* (1907), 150 Ala. 112, 43 So. 216, 124 Am. St. 22; *State* v. *Main* (1897), 69 Conn. 123, 37 Atl. 80, 61 Am. St. 30, 36 L. R. A. 623.

The procedure, suit, or action sought to be relied upon by the party seeking the relief for a finding in its favor, even though it be a proper matter of evidence to 9. consider in reaching a finding, will not be subject to judicial knowledge without its formal introduction in evidence. *Grusenmeyer* v. *City of Logansport* (1881), 76 Ind. 549; *LaPlante* v. *Lee* (1882), 83 Ind. 155; *Haaren* v. *Mould* (1909), 144 Iowa 296, 122 N. W. 961, 24 L. R. A. (N. S.) 404; Wharton, Law of Evidence, (3d ed.) §326; *Bank of Montreal* v. *Taylor* (1899), 86 Ill. App. 388; *Bond* v. *White* (1880), 24 Kans. 45; *Anderson* v. *Cecil* (1897), 86 Md. 490, 38 Atl. 1047; *Ladd* v. *Bean* (1920), 119 Me. 377, 111 Atl. 428.

It may be stated as a general rule that a trial court will not take judicial notice in deciding one case, of its own records in another and distinct case. 10. *Matthews* v. *Matthews* (1910), 112 Md. 582, 77 Atl. 249, 29 L. R. A. (N. S.) 905; *Streeter* v. *Streeter* (1867), 43 Ill. 155; *Murphy* v. *Citizens Bank* (1907), 82 Ark. 131, 100 S. W. 894, 11 L. R. A. (N. S.) 616, 12 Ann. Cas. 535; Abbot, Proof of Facts (3d ed.) p. 641; *Commonwealth, ex rel.,* v. *Ball* (1923), 277 Pa. 301, 306, 121 Atl. 191, 29 A. L. R. 626. See the

case: *Thayer* v. *Honeywell* (1898), 7 Kans. App. 548, 51 Pac. 929.

The courts have even gone so far as to hold that a trial court cannot take judicial notice of its own records in another case between the same parties. *Matthews* v. *Matthews, supra; Pacific Iron & Steel Works* v. *Goerig* (1909), 55 Wash. 149, 151, 104 Pac. 151.

And, in some jurisdictions, judicial knowledge will not be taken by a court of its own records in a different case between the same parties and in relation to the same subject-matter. *Oliver* v. *Enriquez* (1911), 16 N. M. 322, 117 Pac. 844, Ann. Cas. 1913A 140; *Murphy* v. *Citizens Bank, supra; Banks* v. *Burnam* (1875), 61 Mo. 76; See *Commonwealth* v. *Hill* (1853), 11 Cush. (Mass.) 137; *In re Bennett* (1897), 84 Fed. 324.

The trial court, even though the facts were offered in evidence which appellee claims supported finding No. 19, dispensed with the formal proof of such facts,

11. and seeks to take judicial knowledge of the very facts, proof of which it refused. It has been held that a trial court cannot dispense with the formal proof of the records in another action and then take judicial knowledge of the fact that certain matters were adjudicated in such case. It is, therefore, held that judicial notice could not be resorted to by the trial court to sustain its finding No. 19, and such finding was not sustained by sufficient evidence. The action of the trial court in overruling appellants' motion for a new trial was error.

The exclusion of the evidence offered by appellants to show that the sum of $1,267.86, which represented the only cash that came into the control of appel-

12. lants as receivers had been exhausted in payment of other creditors whose claims had been decreed priority and paid by order of the court, did not harm appellants, for the reason that appellee does not claim

priority from that fund. Appellee says in its brief that since this fund of actual cash which came into the control of appellants was immaterial to the decision of this case, the disposition of such cash would not be material unless it were applied to the payment of appellee's claim.

Judgment reversed; cause remanded to the lower court, with instructions to sustain the motion for a new trial.

Ewbank, J., not participating.