## LOVETT v. LOVETT.

[No. 12,664. Filed March 11, 1927. Rehearing denied June 17, 1927. Petition to transfer dismissed February 14, 1928.]

Parker, Crabill, Crumpacker & May, for appellant.
Samuel B. Pettengill and Iden S. Romig, for appellee.

NICHOLS, J.—Action by appellant against appellee, to enjoin her from violating a contract made by her and appellant, her brother, by which she agreed to make, and to leave at her death, her last will, in and by which she would devise and bequeath all of the property, both real and personal, with some inconsequential exceptions, that she might then own, to appellant, if he should survive her, and to his children, if he should predecease her.

The amended complaint is in one paragraph. To this amended complaint, appellee filed a demurrer, which was sustained. Thereupon, appellant refused to plead further and elected to stand on his amended complaint, and the court rendered judgment that appellant take nothing.

The error assigned is that the court erred in sustaining the demurrer to the amended complaint.

The amended complaint is long, occupying twenty-one pages of the record. The facts averred, substantially as summarized by appellant, and so far as we need to set them out, are that appellant and appellee are brother and sister. Appellant is a lawyer, a resident of the city of South Bend, Indiana. He is the father of three children, and a widower. Appellee is a resident of the State of New York, being temporarily a resident of the said city of South Bend. She is a single woman and has no children.

On or about April 21, 1924, at the city and State of New York, appellant and appellee made an agreement or contract, which was, in substance, that for the good and valuable considerations specified in the amended complaint, she would make and execute her last will,

which should not be revoked, and which should remain and be her last will at her death, by which she would devise and bequeath to him, in case he should survive her, and to his children, in case he should predecease her, all of the property that she might then own, with some exceptions of small value, including the property that she might receive from Clara L. Wyman, who was then living, was the sister of appellant and appellee, was then a resident of said city of South Bend, and was a widow and childless. Mrs. Wyman was known to be a woman of large means. Appellant and appellee were her only heirs presumptive. She died on January 10, 1925. Her will was duly probated at St. Joseph county, Indiana. By it she bequeathed to appellee approximately $46,226. A part of this sum was bequeathed to her by a clause of her sister's will, in these words:

"Article Four: I give and bequeath to my sister, Ida M. Lovett, the sum of $30,000 to be invested by her in annuity bonds of the Moody Bible Institute."

These so-called annuity bonds are, in effect, promises, by the institute, to pay to the annuitants therein named the interest calculated at a given rate on the amount paid in by or for the annuitant, annually, during his or her life, and the principal is a gift or donation to the institute. Immediately after said agreement or contract was made, appellee, in the said city of New York, made and executed her will in strict conformity to the agreement above stated and in part performance thereof.

On February 8, 1925, being after the death of said Clara L. Wyman, for the considerations stated in the amended complaint, appellee agreed with appellant that she would not use any part of said $30,000 cash legacy, or any part of her other money or property, in the purchase of any of the bonds of the Moody Bible Institute, or of like bonds and, further, that she would invest said sum of $30,000 and all other money that she might have

to invest, in bonds or securities of a kind which would not constitute a gift of the principal to the company or association which might issue the bonds or securities.

On May 12, 1925, appellee repudiated her agreements of April, 1924, and February, 1925, declared that she would not be bound by them, threatened and declared it to be her purpose and intention to invest the proceeds of said $30,000 cash legacy in the annuity bonds of the Moody Bible Institute, and to cancel and revoke her will of April 21, 1924, or make a codicil thereto, or make a new will, if at any time she might think it wise to do so.

This action was brought to restrain and enjoin appellee from doing any of the acts threatened to be done by her, the effect of which, if done, would be to divest herself of the proceeds of said legacy and to dispose of her property contrary to said agreement.

One of appellee's grounds of demurrer as appears by memorandum is that the complaint on its face shows that there was no written contract or memorandum, and that there are no facts pleaded in said complaint to take the contract or contracts out of the statute and such contracts, are therefore, unenforceable. There is much contention as to whether the case is governed by the laws of the State of New York or of Indiana, but we are little concerned as to which state controls as to the statute of frauds, though it is much discussed in the briefs. It is well settled that the statute of frauds, whether of New York or Indiana or elsewhere, applies only to executory contracts, and not to agreements which have been completely executed and performed on both sides. In such case, the rights, duties and obligations of the parties are entirely unaffected by the statute. Twenty-seven C. J. p. 321, cites numerous cases in both Indiana, and in New York, as well as in most of the other states to sustain this rule. We do not need to cite them. It is averred in the complaint

that by the contract appellee agreed to leave all her property, save some minor bequests, to appellant, and that she would in pursuance of the agreement, and in part performance thereof, at once execute her will carrying out the purposes and intent of the agreement, that she would not thereafter in any way destroy, cancel or revoke such will, and that she would keep the same as her last will and testament; that the will was made by her pursuant to the agreement, and in harmony therewith, and that when so executed, it became and was, and now is an integral part of said contract, and that it was thereby, and as a part of the contract, irrevocable without the consent of appellant. Appellee had thereby done all that it was humanly possible for her to do, and the contract must be classed as an executed contract, and as such wholly unaffected by the statute of frauds.

Appellee's contention that appellant's cause of action is barred by the statute of limitations, can only apply, if at all, to the first agreement between the parties made in 1915, and to professional services rendered by appellant for appellee. Any separate independent action on these agreements or for compensation for services rendered, was clearly barred by the statute, either of Indiana or New York, but such agreements and compensation might and did become a part of the consideration for the agreement of April 21, 1924. Appellee admits that barred debts may be revived, and they may also become a valid consideration for a new promise. This rule of law is thus stated in 13 C. J. 364, where numerous authorities are cited to sustain it: "A debt barred by the statute of limitations may be revived by a new promise to pay it by the debtor, but not by a third person who was not morally bound to pay it." Appellee waived the statute as to these matters when she carried them forward as a consideration along with love and affection and family relationship,

for the agreement of April 21, 1924, upon which this action is predicated.

This brings us to the question of the adequacy of this consideration. It must be conceded that such a consideration was but a moral duty to do that which had at one time been a legal obligation, but which had ceased to be such. Appellee contends that the contract was only executory and that, therefore, it can be supported in Indiana only by a "valuable" consideration as distinguished from a "good" consideration, admitting, however, that a "good" consideration will support an executed contract, if creditors are not thereby defrauded, but not an executory one. While we are of the opinion that the contract, as to the rights of the parties thereunder, is controlled by the law of New York where it was made, and where the will which it is averred became a part thereof was executed, yet we may concede for the purpose of considering appellee's contention that it is controlled by the law of Indiana, and then, holding as we have above that appellee having done all that it was humanly possible for her to do, her contract was an executed one, to prevent the violation of which this action is brought, and that it is supported by a sufficient consideration. It is a reasonable conclusion of fact from the averments of the complaint that at the time appellee made her promises to her brother, she was actuated by an impulse of appreciation for the many kind acts that he had shown to her, the value of which was not to be measured alone by a monetary standard. Under such circumstances, the rule as announced by Elliott, J., in *Wolford* v. *Powers, Admx.* (1882), 85 Ind. 294, 303, should control. It is as follows: "Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value

should be left undisturbed, unless, indeed, there is evidence of fraud. There is, in such a case, absolutely no rule by which the courts can be guided, if once they depart from the value fixed by the promisor."

Again, in harmony with *Shade* v. *Creviston* (1884), 93 Ind. 591, 594, where, as here, the promisor got all the consideration that she asked, it is well settled that she cannot be heard to complain.

As above set out, Item 4 of the will of Clara L. Wyman, deceased, is as follows: "I give and bequeath to my sister, Ida M. Lovett, the sum of $30,000 to be invested by her in annuity bonds of the Moody Bible Institute." The nature and purpose of these bonds are above set out. Appellant contends that this item of his sister's will gives appellee an unconditional cash legacy of $30,000 and he seeks to enjoin appellee from making such investment of the $30,000 in annuity bonds of the Moody Bible Institute. We cannot agree with appellee's contention that if all of the provision with reference to the Moody Bible Institute were stricken from Mrs. Wyman's will, appellant would not profit thereby. The contract between appellee and appellant, as set out in the complaint, and the violation of which appellant seeks to enjoin, after providing that appellee would leave to appellant, and in the event of his death, then to his children, all of her property, real and personal, with minor exceptions, and that she would make her will to that effect, reserved to appellee the right to spend such part of the income and principal of whatever property she might have prior to her death, in providing for her personal living expenses, including such comforts and pleasures as she might wish to provide herself with; also the right to spend such part of ten per cent. (the Bible tithe) of her yearly income but not more—for the

promotion of religious, educational, missionary and charitable enterprises, as she might see fit so to spend.

It appears by the averments of the complaint that Mrs. Wyman, by her will, in addition to the bequest of $30,000, gave to appellee property of the value of $16,226, and an annuity of $6,000 per year during life, while, we may add, to appellant, she gave a cash legacy of $90,000, an annuity of $8,000 per year during life, and an additional contingent annuity of $6,000 per year, in the event that appellant should survive appellee. It would seem from this provision for appellee that, though she is unrestrained in her expenditures for her living expenses, including her comforts and pleasures, and her Bible tithing, she would have but little occasion to use any part of the $30,000, were it, as appellant contends, an absolute unconditional gift to her, and that it would remain as a part of her residuary estate which, under the contract and will, was willed to appellant. But we cannot agree with appellant's contention that the provision in Mrs. Wyman's will bequeathing to appellee $30,000 to be invested in Moody Bible Institute annuity bonds was an absolute unconditional cash legacy to appellee. Mrs. Wyman had theretofore invested in two such bonds, paying therefor $20,793.50, which bonds provided that after Mrs. Wyman's death, appellee should receive the annuity therefrom during her life, which was $1,361.58 per annum, and which amount appellee is now receiving in addition to the provision made for her in Mrs. Wyman's will as above set out. That Mrs. Wyman fully intended further investment in such bonds for the benefit of appellee during her life, as it seems to us, can hardly be questioned. We are not ready to say that the words "to be invested by her in annuity bonds of the Moody Bible Institute" are to be construed as mere precatory words, and as only recommending that such investment

be made. Precatory trusts may be created by words of entreaty, wish, expectation, request or recommendation. As was said in *Trustees of Hillsdale College* v. *Wood* (1906), 145 Mich. 257, 263, 108 N. W. 675: "The essence of . . . precatory trusts is that the words creating them, while in form the expression of a request, wish or recommendation on the part of the testator, are, in fact, intended by him as a positive direction or command obligatory upon the person to whom they are addressed." But the words here used are not even precatory in form, but are in form directory, and in meaning imperative. The rule that must prevail under the circumstances here averred is thus expressed in 40 Cyc 1736, citing *Malim* v. *Keighley* (1794), 2 Ves. Jr. 333, 30 Eng. Reprint 659; "Wherever a person gives property and points out the object, the property, and the way in which it shall go, that creates a trust unless he shows clearly that his desire expressed is to be controlled by the party and that he is to have an option to defeat it." Again if a person shows a desire that a thing shall be done, unless there are plain express words or necessary implication that he does not mean to take away the discretion, but intends to leave it to be defeated, the party shall be considered as acting under a trust. It seems clear that a testamentary trust was created by the bequest to appellee of the $30,000 with direction to invest it in annuity bonds of the Moody Bible Institute, that appellee was given no discretion with reference thereto and that sum did not become a part of appellee's personal estate so as to go to appellant, if not otherwise used by her, as a part of her residuary estate. Had a demurrer been addressed to so much of appellant's complaint as presents this question, it should have been sustained. The demurrer, however, was presented to the complaint as a whole, and holding as we do, that appellee was bound by her contract to make the

will involved, and that she had no right to revoke it, we hold that the demurrer should have been overruled. ·

The judgment is therefore reversed.

Dausman, J., absent.

### ON PETITION FOR REHEARING.

NICHOLS, J.—On petition for rehearing appellee argues that what appellee did was of no force and effect. What she did was to make an agreement to execute her last will in and by which she would devise and bequeath all of her property, with some minor exceptions, to appellant if he should survive her and to his children if he should predecease her. Pursuant to this agreement, and as a part of it, appellee did execute her will. That such an agreement is enforceable is sustained by numerous authorities. In *Roehl, Admr.*, v. *Haumesser* (1887), 114 Ind. 311, 15 N. E. 345, the court says: "Since the chief incentive to the acquisition of property is the right that every man has to dispose of that which he accumulates in the manner he may judge best, it has been well said that: 'It is not only in harmony with sound principle that a person may make a valid agreement binding himself to dispose of his property, in a particular way, by last will and testament, but it is supported by an almost unbroken current of authorities, both English and American.' *Johnson* v. *Hubbell*, 66 Am. Dec. 784, note." And where the promisor repudiates her contract to make a will, an action will lie for a specific performance of the contract to dispose of the property in a specific way during the life time of promisor, and it follows that if a will has been made and the promisor seeks to revoke the same, an action to enjoin such revocation in violation of the contract of which the will is made a part may be maintained in the life time of the promisor. *Tesk* v. *Dittberner* (1903),

70 Nebr. 544, 98 N. W. 57; *Chantland* v. *Sherman* (1910), 148 Iowa 352, 125 N. W. 871; *Duvale* v. *Duvale* (1896), 54 N. J. Eq. 581, 35 Atl. 750.

Petition for rehearing denied.