KRULL *v.* PIERCE, JR., ET AL.

[No. 17,520. Filed March 6, 1947. Rehearing Denied April 25, 1947. Transfer Denied November 14, 1947.]

*Henry M. Dowling,* of Indianapolis, for appellant.

*Gilliom, Armstrong & Gilliom,* of Indianapolis, for appellees.

CRUMPACKER, C. J.—This litigation has its origin in a written contract dated January 27, 1931, whereby Elizabeth V. Pierce assigned to her son, the appellee Henry Douglas Pierce, Jr., 332 shares of the capital stock of the Vinton-Pierce Company, an Indiana corporation. This contract of assignment contained certain

conditions subsequent, whereby the said appellee Pierce was obligated to devote the dividends "apportionable" to said stock to the use and benefit of his mother, the said Elizabeth V. Pierce, and his sister, the appellant herein, during their respective lives.

The Vinton-Pierce Company has paid no dividends on its stock since June 30, 1934, and, feeling that its failure to do so is directly attributable to the wrongful acts and conduct of the appellee Pierce, the appellant brought this suit. She complains that (1) said appellee Pierce, as the controlling stockholder and director of the Vinton-Pierce Company, wrongfully appropriated to his own use large sums of money which were properly applicable to the payment of dividends; (2) the said Pierce so dominated the affairs of said company that he received sums therefrom tantamount to dividends upon 660 shares of stock he claims to own while denying any corresponding return to the 332 shares assigned to him for the appellant's benefit; (3) the stock so assigned is in danger of becoming worthless through the acts and omissions of the appellee Pierce; and (4) the purpose for which said company was organized and incorporated has become impossible of performance. By way of relief she asks that the appellee Pierce account for his misuse of the company's income; that her lien on the stock assigned for her benefit be foreclosed; that a receiver be appointed for the Vinton-Pierce Company to sell its assets and distribute the proceeds in such manner as to give approximation to the objective Elizabeth V. Pierce sought to reach by the assignment agreement of January 27, 1931.

Trial was to the court which found the facts specially and stated conclusions of law thereon unfavorable to the appellant and, over her motion for a new trial, entered judgment denying her any relief whatever.

Error is predicated on each conclusion of law and on the overruling of the motion for a new trial which charges that (1) the decision is not sustained by sufficient evidence; and (2) such decision is contrary to law.

It has been held repeatedly in Indiana that an assignment of error to the effect that the decision of the court is not sustained by sufficient evidence presents no question for review when the decision involved is negative. *Wadler* v. *Mogul Rubber Corp.* (1945), 116 Ind. App. 152, 61 N. E. (2d) 472; *Scoopmire* v. *Taflinger* (1943), 114 Ind. App. 419, 52 N. E. (2d) 728; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. (2d) 474; *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. (2d) 905. In the Scoopmire case we said: "The reason for this rule is obvious as a verdict unfavorable to the party who has the burden of proof does not rest on the persuasiveness or quantum of the evidence against him but rather upon his failure to sustain the burden of establishing his own case by a preponderance of the evidence." Such being the reason for the rule, the appellant contends it has no application here because the undisputed evidence discloses a trust or fiduciary relationship between the appellee Pierce and herself and that said appellee dealt with the subject matter of the trust for his own benefit and thus cast upon himself the burden of proving that he acted honestly and absolutely in good faith. Therefore, says the appellant, what appears to be a negative decision is in fact an affirmative one in favor of the party having the burden of proof and must be sustained by sufficient evidence.

The fallacy of such argument, however, lies in the fact that under the rule in this state the burden of proof

never shifts from the party who tenders the issue. Though the burden of going forward with evidence to satisfy presumptions may shift during the trial, the basic necessity of proving the allegations of the complaint by a fair preponderance of all the evidence always remains with the plaintiff. *McAdams* v. *Bailey* (1907), 169 Ind. 518, 534, 82 N. E. 1057; *Fletcher, etc., Trust Co.* v. *American State Bank* (1925), 196 Ind. 118, 130, 147 N. E. 524.

A negative decision, however, may be contrary to law if the evidence positively requires a conclusion contrary to that reached by the trial court. See *Daniels* v. *Indiana Trust Company* (1943), 222 Ind. 36, 49, 51 N. E. (2d) 838. The appellant contends that such is the situation in respect to many of the ultimate facts found by the court and upon which its decision rests. Before discussing this question it is well to have the provisions of the assignment agreement clearly in mind as it is the charter of the appellant's rights. The agreement is dated January 27, 1931, and is executed by Elizabeth V. Pierce and the appellee Henry Douglas Pierce, Jr. It recites that in consideration of the assignment to him of 332 shares of the capital stock of the Vinton-Pierce Company by the said Elizabeth V. Pierce he, the said Henry Douglas Pierce, Jr., undertakes to pay out of dividends "apportionable" to said stock, the following sums of money in the following manner: (1) $100 per month during the lifetime of Elizabeth V. Pierce and $300 after the death of Elizabeth V. Pierce, to be paid to Theresa V. P. Krull during her lifetime, all the dividends apportionable to said stock during the lifetime of Elizabeth V. Pierce after paying said sum of $100 per month to Theresa to be paid to Elizabeth V. Pierce. (2) "If and when" the Vinton-Pierce Company, after the death of Elizabeth V. Pierce, shall sell its property at

the corner of Meridian and 14th Streets in Indianapolis, an additional sum of $250 per month, which sum is to be paid during her lifetime to Theresa. (3) "If and when" said Vinton-Pierce Company, after the death of Elizabeth V. Pierce, shall lease its property at the south-west corner of Pennsylvania and Market Streets in Indianapolis for 50 years or more, a further additional sum of $450 per month, which sum is to be paid to Theresa during her lifetime. All payments are cumulative and terminate upon the death of Elizabeth or Theresa, whoever shall live the longer, at which time ownership of said shares of stock shall "become fully vested in Henry Douglas Pierce, Jr., free from all liens and limitations." This agreement sets up a formula by which the dividends "apportionable" to the stock assigned are to be determined. According to such formula said dividends are "to consist of all the income received by said Vinton-Pierce Company during the current year, after first deducting from its gross income actually received during such year the necessary current taxes insurance premiums and interest on mortgage indebtedness existing against the real estate of said company, together with a necessary amount required for current operating expenses and upkeep of the property of said company for such year, but without deduction for payment or payments on the principal of the mortgage debt unless "required by the mortgagee so to do." In the event the said Henry Douglas Pierce, Jr., fails to carry out any of the material provisions of the assignment agreement all right and title to said shares of stock shall revert to Elizabeth V. Pierce if living at the time of such default or, in case of her death prior to such default, then to said Theresa V. P. Krull, as her sole and absolute property. The payment of dividends as above provided is forgiven if the building at the southwest

corner of Pennsylvania and Market Streets is destroyed or so damaged by fire or an act of God as to render it untenantable in whole or substantial part; or if it becomes untenantable by virtue of natural depreciation or obsolescence; or because of an order of municipal, state or national authority or an order of condemnation; or if the revenues should drop because of lack of tenants.

Endorsed on this agreement, and duly executed as a part thereof, is the following: "In consideration of the foregoing assignment according to its provisions, and in further consideration of the payment to me of the sum of $4,000.00, the receipt of which is hereby acknowledged, the foregoing assignment is accepted by the undersigned, Theresa V. P. Krull in full payment, satisfaction and settlement of all rights and interests which I have or claim to have now or hereafter in any or all of the properties now owned or hereafter to be owned by the Vinton-Pierce Company or by said Elizabeth V. Pierce or both of them." Certificate No. 12, evidencing the stock in controversy, was deposited with the appellee Indiana National Bank of Indianapolis to assure the performance of the terms of said agreement.

The evidentiary background of this litigation, as disclosed by the record, indicates beyond controversy that the paramount object of the above assignment agreement was to provide a substantial monthly cash allowance for the appellant during her lifetime in lieu of any provisions that otherwise would be made for her by her mother's will. The conclusion is irresistible that it never occurred to the mother that the dividends apportionable to the assigned stock would ever be insufficient for such purpose except under the conditions she specifically enumerated as warranting their non-payment.

Elizabeth V. Pierce caused the incorporation of the Vinton-Pierce Company in 1927 with a capital structure

of 1,000 shares of no par value stock of which 996 shares were issued to her in exchange for all her real estate holdings in Indianapolis and 4 shares were used to qualify a board of directors. Although organized and authorized to do a general real estate and investment business the Vinton-Pierce Company has never engaged in any enterprise other than the management of the Elizabeth V. Pierce properties and business incidental thereto. Shortly after its incorporation Mrs. Pierce divided her stock holdings in said Vinton-Pierce Company into three blocks of 332 shares each. She assigned each of these blocks of stock to her son Henry Douglas Pierce, Jr., one to be his property outright and absolutely, one to be his subject to a life estate in herself and one subject to the provisions of the assignment agreement above described. Since his mother's death on July 8, 1936, said Henry Douglas Pierce, Jr., has exercised full and absolute control over the affairs of the Vinton-Pierce Company.

The appellant's whole case seems to be built around the concept that the desire of Mrs. Pierce to provide for her daughter, as evidenced by the assignment agreement for the daughter's benefit, coupled with her acts investing her  son with absolute control of the source of revenue through which the daughter's benefits must come, created a fiduciary or trust relationship between the appellant and the appellee Pierce to which his subsequent conduct did violence. We are unable to subscribe to such theory. To us it seems clear that the stock assignment agreement, which is the origin and measure of the appellant's rights, is nothing more than a contract between Elizabeth V. Pierce and Henry Douglas Pierce, Jr., for the benefit of a third party, to-wit, the appellant. Through the medium of such contract the mother vested title to the stock in-

volved in her son absolutely, to be divested in the event he failed to perform the covenants in said contract on his part to be performed. The appellant was vested with no title in said stock and could acquire no interest in it as long as the appellee Pierce observed his agreement and even upon default she acquired no interest unless such default occurred subsequent to her mother's death. The fact that the appellee Pierce was vested with complete control of the Vinton-Pierce Company is of little significance. As the absolute manager of the company his relationship to its stockholders and creditors may be of a fiduciary nature [*The Board of Commissioners of Tippecanoe Co.* v. *Reynolds* (1873), 44 Ind. 509] but the appellant is neither a stockholder nor a creditor. His complete control of the company facilitated the performance of his agreement with his mother and deprived him of the defense that the company refused to apportion dividends out of which he could make payments to the appellant as required by such agreement.

This resolves the question before us into the single proposition—does the undisputed evidence impel the conclusion that the appellee Pierce failed to perform any of the covenants in the contract on his part to be performed? In determining this question we must not lose sight of the fact that the source of all payments to the appellant is dividends "apportionable" to the stock the appellee Pierce holds for her benefit. The word "dividends" as used in the agreement means dividends declared in accordance with the formula therein set up if such dividends can be so declared out of the company's earnings, surplus or undivided profits. The law governing corporations in Indiana makes the payment of dividends out of capital unlawful except while such corporation is in the process of dissolution. § 25-211, Burns' 1933; *Allied Magnet Wire*

*Corp.* v. *Tuttle* (1927), 199 Ind. 166, 154 N. E. 480, 156 N. E. 558, 50 A. L. R. 252. We find nothing in the agreement which indicates that the parties thereto intended that dividends should be apportioned to the stock involved even though the voluntary dissolution of the company were necessitated thereby. It is true that payments were to be increased upon sale of the Meridian Street property, a capital asset, but when we interpret this provision in the light of its factual background, as disclosed by undisputed evidence, it is clear that the proceeds of such a sale were to be used to discharge a mortgage of $175,000 on the property at the corner of Pennsylvania and Market Streets, held by the Massachusetts Mutual Life Insurance Company, and thus terminate the payment of interest thereon in a sufficient sum to pay such additional dividends. The company's capital was to remain undisturbed by the transaction.

The appellant cites many acts of alleged misfeasance on the part of the appellee Pierce which, she claims, have deprived her of the dividends contemplated by the assignment agreement. These may be summarized as follows: Money unnecessarily borrowed in 1938 and 1941; income in 1937, 1938 and 1942 unaccounted for; unnecessary expenditures for maintenance, supervision and management; excess interest payments; $13,100 available in 1936 and 1941 for payment of dividends and not so used; duplication of credits for maintenance; duplication of credits for supervision and management and payment of officers' and office salaries for unneeded services. These charges all present issues of fact upon which the court, with evidentiary support, found against the appellant. Such findings are beyond our reach and we pass them without further comment.

There are, however, certain uncontroverted transactions that present questions of law. It is undisputed that at the time the Vinton-Pierce Company was organized the appellee Pierce held his mother's promissory note for $5,000 executed wholly without consideration. Shortly after its incorporation the company assumed and agreed to pay this note and later did so with $1,000 in cash and the conveyance to him of certain real estate on Capitol Avenue which he took at an agreed price of $4,000. The appellant contends that this transaction was wholly unlawful, *ultra vires*, and served to deplete funds that otherwise would have been available for dividends.

By its findings numbers 4 and 7, the court specifically found that this note was given to the appellee Pierce by his mother to equalize a gift of $5,000 in cash previously made to the appellant and when she conveyed all of her real estate to the Vinton-Pierce Company in exchange for its stock it was understood that, as a part of the consideration for such conveyance, the company should assume said note. This the company did, by resolution duly adopted and spread of record on July 22, 1927, a few weeks after its incorporation. Thus the note became a valid and legitimate obligation of the company and its subsequent payment cannot be considered either *ultra vires* or a breach of the assignment agreement.

It is also undisputed that the appellee Pierce caused the company to pay him, from time to time, an aggregate sum approximating $14,000 on a series of promissory notes executed by said company but bearing no intangible stamps as required by law. The appellant contends that this money should have been devoted to dividends as the particular notes it went to pay were not current obligations of the company during the years such payments were made, as required by the dividend formula.

It clearly appears from the facts found by the court that each year after 1931 the company was unable to discharge, out of cash receipts, all of the obligations which the formula contemplated should be paid before dividends. In part, at least, this current deficiency, consisting of taxes, insurance, interest, etc., was met by the company, from time to time, by borrowing money from the appellee Pierce and evidencing such loans by its promissory notes. Thus said notes represent current obligations of the company and until retired the formula did not require the declaration of dividends.

In view of the fact that the parties stipulated and the court found that all intangible taxes due on said notes were fully paid with penalty during the trial of this cause below, we regard the fact that no intangible tax stamps were attached to the notes at the time they were paid, as of no consequence. At most the right of the appellee Pierce to the payment of these notes was merely abated until stamps in a proper amount were attached thereto. *Gradeless* v. *Gradeless, Admr.* (1943), 114 Ind. App. 10, 49 N. E. (2d) 398. The character of the debt was not changed by the absence of stamps and said notes still remained the evidence of current obligations of the company to be paid before dividends.

From 1931 through 1944, the Vinton-Pierce Company took credit before dividends for an annual charge for depreciation of its capital assets. The appellant contends that this was not contemplated by the dividend formula and therefore, being entirely within the control of the appellee Pierce, was a breach of the assignment agreement. We must assume that the dividends Mrs. Pierce had in mind when she laid down the formula for their declaration, were lawful dividends

and such as might be declared on a sound economic and accounting basis. The formula provides for the payment of "current operating expenses" before dividends and there seems to be little doubt that depreciation is a legitimate item of operating expense. This court said in *Indiana Veneer, etc., Co.* v. *Hageman* (1915), 57 Ind. App. 668, 681, 105 N. E. 253: "The item of depreciation in the value of the plant, under the modern rule of business, is properly an expense charge, and no error was committed in so holding." To like effect are *Lindheimer* v. *Illinois Bell Tel. Co.* (1934), 292 U. S. 151, 167, 78 L. Ed. 1182, 1193 and *Knoxville* v. *Knoxville Water Company* (1909), 212 U. S. 1, 13, 53 L. Ed. 371, 380.

The assignment agreement provides that "if and when" the Meridian Street property is sold an additional sum of $250 per month shall be paid to the appellant, if her mother then be dead, out of dividends apportionable to the assigned stock. Special finding number 44 is as follows: "At no time since January 1, 1931, has it been possible for the Vinton-Pierce Company to sell or otherwise dispose of said Meridian Street property for a price and upon a basis which would be to the advantage of said Vinton-Pierce Company and its stockholders."

Notwithstanding this fact, the appellant finds in the assignment agreement, and its factual background, a duty on the part of the appellee Pierce to cause such property to be sold to make assets for the payment of the dividends provided by said agreement. Viewing the whole case history leading up to the formation of the Vinton-Pierce Company and the execution of the assignment agreement, the appellant sees a paramount purpose and determination on the part of her mother to provide for her even to the liquidation of the corporation

she organized. Certainly no such purpose can be gathered from the four corners of the agreement itself. In reference to the sale of the Meridian Street property one can gather from said agreement nothing more than a definition of the appellees' obligations if such event should occur. Nor does an examination of said assignment agreement reveal any duty on the part of the appellee Pierce to cause said property to be sold against the interest of the company and its stockholders in order to apply the proceeds on the mortgage and thus hasten the day when dividend payments can be made to the appellant out of current earnings. If the said appellee is burdened with any such duty, legal or moral, it must arise entirely independent of the assignment agreement. The possibility that Elizabeth V. Pierce so intended is foreclosed by special finding number 8 wherein the court finds that at the time she executed said assignment agreement she considered the Meridian Street property to be worth $200,000 and if, at some future time, it could be sold at that price it was desirable to do so, in order that the proceeds could be used to pay off the company's mortgage indebtedness, thus effecting an interest saving sufficient to pay the increased dividends made contingent on that event. There remains but one source from which a duty to sell could arise—the general principles of corporation law. Such principles, no doubt, cast a duty on the appellee Pierce to cause the company to sell this property at any time when it can be done to the best interests of the company itself and when it is apparent that it would be against such interests to hold it longer. Finding number 44, above set out, excludes the possibility of a breach of duty in this respect. We know of no law, nor have we been referred to any, that requires a corporation, through its officers, to sell its assets to its own prejudice, in order to facilitate the

performance of a contract which one of its officers and controlling stockholders has made for the benefit of a third party and to which contract the corporation is a stranger.

As to the Vinton building at the corner of Pennsylvania and Market Streets, the very wording of the assignment agreement definitely precludes the conclusion that its sale was contemplated by anyone. It was to be rented on a long term lease for 50 years or more, if possible, and contingent on that event alone were additional dividends to be paid.

Under the law and the facts, as the court has found them, we can see no breach of contract in the failure of the appellee Pierce to cause the company's real estate to be sold.

A careful study of the facts as found by the court in this case presents the over-all picture of a mother with two adult children of whom she was equally fond and for whose financial well-being she was equally concerned. Her principal wealth being represented by real estate which could not equally be partitioned in kind, she concluded to incorporate her estate and from the dividends on its capital stock make equitable provisions for her children. Events and circumstances which she could neither foresee nor control thwarted her purpose. The great depression of the Thirties depreciated the value of the company's assets and reduced its earnings to the point where it could not pay its taxes nor the interest on its mortgage indebtedness. It suspended the payment of dividends in 1934 and since that time and until 1943 its entire earnings have been insufficient to meet its current and necessary operating expenses. This has resulted in an impairment of its capital stock in the amount of approximately $85,000 which must be restored before the payment of dividends can lawfully be resumed.

Under present conditions the company's revenues are higher than for any year since 1930 and current income now exceeds current deductions by approximately $9,000 per year which is available to restore its impaired capital. As interest payments are reduced this sum will increase and in the course of five or six years it can reasonably be anticipated that the deficit will be wiped out and the payment of dividends resumed. The company is solvent and able to meet its creditor obligations. In the face of all this it is difficult for us to see justification for a decree which in effect would completely rewrite the contract Elizabeth V. Pierce made for the benefit of her' children simply because such contract was dictated by her mistaken appraisal of the future possibilities of her properties.

The appellant contends that the court's special findings are insufficient to support its conclusions of law because they are silent as to eight ultimate facts material to the issues. If this be true we must assume that such facts were found against the appellant who had the burden of establishing them. *Fletcher, etc., Trust Co.* v. *American State Bank, supra; Peele* v. *Ohio, etc., Oil Co.* (1902), 158 Ind. 374, 375, 63 N. E. 763.

We have treated error predicated upon the conclusions of law as waived by the appellant's failure to brief propositions addressed to each of them separately and to support her points thereunder with authorities as required by the rules.

We recognize the inherent power of a court of equity, under certain conditions, to modify the terms of a trust in order that the purposes of the donor may be made effective but we cannot see justification for the exercise of such power in this case. As we have stated heretofore no trust is involved. In the absence of a breach of the

assignment agreement by the appellees such agreement must stand as written. The trial court decided that there has been no such breach and we find no error in the decision.

Judgment affirmed.

ROYSE, J.—Not participating.

NOTE.—Reported in 71 N. E. (2d) 617.