**In re the ESTATE OF Carla Gödeke VON WENDESSE, also known as Carla Schicke, Deceased.**

**Marjory Ann HOFFMAN, as Administratrix of the Estate of Clarence Jacob Hoffman and Individually and as Successor in Interest to the Interests of Kurt Hoffman, and Cindy Hutchison, Appellants–Claimant & Petitioner**

**v.**

**TRUSTCORP BANK, COLUMBUS, N.A., an affiliate of First of America Bank, n/k/a First of America Bank–Indianapolis, Executor of the Estate of Carla.**

**No. 16A01–9303–CV–89.**

Court of Appeals of Indiana, First District.

Aug. 4, 1993.

Transfer Denied Oct. 22, 1993.

F. Jefferson Crump, III, Jerry E. Prall, Jewell, Crump & Angermeir, Columbus, for appellants.

Thomas C. Bigley, Jr., Joan Tupin Crites, Sharpnack, Bigley, David & Rumple, Harold V. Jones, Jr., Jones, Patterson, Boll & Tucker, Columbus, for appellees.

ROBERTSON, Judge.

This is an interlocutory appeal from a grant of summary judgment in favor of the estate of Carla Gödeke von Wendesse, also known as Carla Schicke, (hereinafter referred to as Carla Schicke) on the second count of Marjory Ann Hoffman's complaint against Schicke's estate.

We reverse.

In count two of her complaint, Hoffman alleged that Schicke and Hoffman's father, Clarence Hoffman, who lived with Schicke in concubinage, entered into an enforceable contract or promise to make a will by which Hoffman agreed to establish a home with Schicke and provide for her during her lifetime in exchange for her promise to devise to Hoffman's children whatever remained of their mutual estates. Hoffman's proof of the agreement consists primarily of a letter written by her father to his sister in July, 1961, and a will, executed by Schicke in 1968, which devises her estate should Clarence Hoffman predecease her to Hoffman's children.

Schicke's estate argues that it is entitled to summary judgment because the purported oral agreement is not supported by consideration. The estate also maintains that the agreement cannot be enforced by Hoffman because the agreement falls within the Statute of Frauds and Hoffman is not a third-party beneficiary of the agreement.[1]

On appeal from the grant or denial of summary judgment, we use the same standard in ascertaining the propriety of summary judgment as does the trial court. *Newhouse v. Farmers National Bank of Shelbyville* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is appropriate and "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C).

On appeal, however, the party which lost in the trial court has the burden to persuade the appellate tribunal that the trial court's decision was erroneous. *Indiana Department of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. Our proper role includes the careful scrutiny of the trial court's determination to assure that the non-prevailing party is not improperly prevented from having his day in court. *Id.*

Indiana Trial Rule 56(C) now requires that each party to a summary judgment

---

1. The estate deposed Hoffman, who gave testimony concerning representations made by her father to her during his lifetime, some of which were in the presence of Schicke, about the substance of the agreement and the responsibilities of his daughter to Schicke while she was alive. The estate has designated Hoffman's deposition as part of the evidentiary material which demonstrates that there are no genuine issues of fact and that the estate is entitled to a judgment as a matter of law. However, there appears to be disagreement over whether Hoffman, whose interests are adverse to the estate, is competent to testify at trial. On the estate's motion, the trial court struck certain statements made by Hoffman in an affidavit, in part, because the court determined that the Dead Man's Statutes, Ind. Code 34–1–14–6 and I.C. 34–1–14–7, rendered Hoffman an incompetent witness as to certain matters occurring during Schicke's lifetime. Although both parties appear to want a determination from this court concerning the applicability of the Dead Man's Statutes, and "[a]lthough Marjory believes [the striking of portions of her affidavit] was error, these facts were not material enough to Marjory's opposition to the Motion for Summary Judgment to warrant an appeal on this issue." Accordingly, and in light of the fact that it is the estate which relies upon Hoffman's deposition in support of its motion, we have no cause to address Hoffman's competency.

motion *"designate* to the court *all parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." *Rosi v. Business Furniture Corporation* (1993), Ind., 615 N.E.2d 431, 434. The opposing party must also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. *Id.;* T.R. 56(C). Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court. *Id.* No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H). The parties must strictly comply with the designated evidentiary matter requirement of T.R. 56(C). *Rosi,* 615 N.E.2d at 434.

In support of its motion for summary judgment, Schicke's estate designated the depositions of Donald Jurgemeyer and Marjory Hoffman and the affidavit of Donald Jurgemeyer. The letter in question, dated July 11, 1961, is an exhibit in both depositions. In it, Clarence Hoffman informs his sister of his relationship with Schicke and asks her help in notifying Schicke should anything happen to him as a consequence of his military service. It then reads, in pertinent part:

> Many years ago this lady and I promised and agreed on having a HOME. I lived many years in a house, Sis, but for a few years at least I have had a *home* and I am very proud and happy for that.... The house there is *in her name,* Sis, and everything in it, and is all clear and paid for. *Anything in it that is my personal property is hers, and up to her completely as to what to do with. When she goes, it is agreed that it all, the house, and everything, will go to Marm and Jack, evenly divided. ... Under no circumstance will Jack or Marm interfere or cause any problem for her as*

> *long as she lives.* They can't anyway of course because everything as to that property is in her name *only....* I know that Jack would honor these wishes of mine concerning her and that property, so he should know about it all then.... (Emphasis in deposition copy.)

On its face, and reading the facts contained in the letter in the light most favorable to Hoffman, the nonmovant, the letter establishes that Clarence Hoffman and Carla Schicke had an agreement to have a home which in part consisted of a house and the personalty in it. As part of the agreement, Hoffman gave all of his personal property in the house, whatever that may have been, to Schicke to do with as she pleased during her lifetime. Clarence Hoffman and Carla Schicke agreed that upon Schicke's death "the house and everything" would go to Hoffman and her brother Jack, who predeceased Clarence Hoffman.

 Consideration consists of a bargained-for exchange. *Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 976, on rehearing, *trans. denied.* It may take the form of a benefit accruing to the promisor or a detriment to the promisee. *Id.* A promise constitutes a valuable consideration. *Id.*

██ The letter produced by Hoffman evinces such a bargained-for exchange: Hoffman, motivated by the happiness given him by Schicke, gave to Schicke all of his personal property and his contribution toward their "home," whatever that may have been, in exchange for her promise to devise whatever remained to his children. Clarence Hoffman obtained a benefit both during his lifetime for the acts of kindness bestowed upon him by Schicke in making him a home and in obtaining Schicke's promise that his children would receive the benefit of his estate should Schicke not exhaust it during her lifetime. Schicke agreed to take Hoffman's property and to give up the right to determine the disposition of their property upon her death. Schicke has given up something of value on her part "[s]ince the chief incentive to the

acquisition of property is the right that every man has to dispose of that which he accumulates in the manner he may judge best ..." *Roehl v. Haumesser* (1887), 114 Ind. 311, 317, 15 N.E. 345. In exchange for her promise, Schicke too obtained the benefit of a home and Hoffman's property during her lifetime, to Hoffman's detriment in that he relinquished ownership of his personalty.

■ A person may make a valid contract binding himself to make a particular disposition of his property by last will and testament. *Id.* at 316, 15 N.E. 345; *Caviness v. Rushton* (1884), 101 Ind. 500; *Lovett v. Lovett* (1927), 87 Ind.App. 42, 157 N.E. 104. The only inquiry which the law justifies in the case of an agreement to devise or bequeath property founded on a valid consideration, is as to the validity of the agreement, whether or not it was entered into fairly without surprise or imposition, and whether it is reasonable and not against public morals. *Roehl*, 114 Ind. at 316, 15 N.E. 345. If such an agreement is in writing, so as to satisfy the Statute of Frauds, or if it has been performed in such a manner as to be taken out of the operation of the statute, an action for its specific enforcement may be maintained, or an action for damages may be maintained in special cases. *Id.* at 317, 15 N.E. 345.

The letter from Clarence Hoffman to his sister Jen itself is probative evidence which establishes that the oral agreement between Clarence Hoffman and Carla Schicke, alleged in Hoffman's complaint, was supported by consideration. Consequently, Schicke's estate was not entitled to summary judgment on the ground that the designated evidentiary materials provide no evidence of any consideration for the agreement.

■ The estate of Carla Schicke maintains nonetheless that the parol agreement to devise real and personal property was subject to the operation of the statute of frauds. *See e.g. Wallace v. Long* (1885), 105 Ind. 522, 5 N.E. 666. Hoffman responds that the agreement was withdrawn from the operation of the statute by part performance. We are inclined to agree

with Hoffman. The 1961 letter from Clarence Hoffman to his sister indicates that the performance required of Carla Schicke pursuant to their agreement was the making of a will by which Schicke would devise whatever remained of their mutual estates to Hoffman's children to be shared equally. The undisputed facts relied upon by the estate establish that in 1968, while Clarence Hoffman was still alive, Carla Schicke made such a will specifically devising her entire estate after taxes and expenses should Hoffman predecease her to Hoffman's children "share and share alike." It was not until after Hoffman's death, indeed a matter of days after Hoffman's death, that she took steps to make a new will and revoke the previous one.

In *Lovett v. Lovett* (1927), 87 Ind.App. 42, 155 N.E. 528, this court addressed many of the issues which have arisen in the present case, including the question of when an oral contract to make a will had been sufficiently performed to remove the contract from the operation of the Statute of Frauds. There, the appellant alleged that the appellee-promisor had agreed to leave all of her property to the appellant and that she would, in pursuance of the agreement, and in part performance thereof, at once execute her will, that she would not thereafter in anyway destroy, cancel or revoke such will, and that she would keep the same as her last will and testament.

The *Lovett* court observed that the statute applies only to executory contracts and not to agreements which have been completely executed and performed on both sides. *See also Harwood v. Masquelette* (1932), 95 Ind.App. 338, 344, 181 N.E. 380 (Statute of Frauds applies only to executory contracts and not to agreements which have been completely executed and performed on both sides). The court reasoned that inasmuch as the appellee had made a will which fully complied with her agreement, she had done all which was humanly possible for her to do to complete her performance, and the contract must be classified as an executed contract, which was wholly unaffected by the Statute of Frauds.

*Lovett* compels a similar result in the present case. Carla Schicke made her will, devising her entire estate, including her house, to Clarence Hoffman's children, as she had agreed. She could do no more to perform her agreement with Hoffman. That the manner in which she attempted to revoke her will differs from that of the appellee in *Lovett* matters not to the enforceability of the agreement.

■ Carla Schicke's estate argues that there is no evidence to link the creation of the 1968 will with the agreement evidenced by the letter. We cannot agree. Admittedly, as the estate argues, a jury might agree with the estate that no such agreement existed between Hoffman's father and Schicke and that Hoffman's children were simply once the objects of Schicke's bounty. But, inasmuch as the disposition made by Schicke in the 1968 will fully complies with the performance required of her by the agreement evidenced by the letter, the inference arising from her conduct in making the will is probative of both the existence of the agreement and her part performance of it. The inference is sufficient to forestall summary judgment on the ground that the oral agreement is unenforceable because it falls within the bounds of the Statute of Frauds.

■ The estate maintains that even if the agreement is valid and was enforceable by Clarence Hoffman, Marjory Hoffman is not a third-party beneficiary of the agreement and therefore cannot enforce it. A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party and in which the performance of the terms of the contract between two parties must necessarily result in a direct benefit to a third party which was so intended by the parties. *Fiat Distributors, Inc. v. Hidbrader* (1978), 178 Ind.App. 200, 381 N.E.2d 1069. A third-party beneficiary contract exists when the parties intend to benefit a third party; the contract imposes a duty on one of the parties in favor of the third party; and the performance of the terms of the contract render a direct benefit to the third party intended by the parties to the con-

tract. *Tonn & Blank, Inc. v. Board of Commissioners of LaPorte County* (1990), Ind.App., 554 N.E.2d 827, 828, *trans. denied.* ·The contract must evidence an intention to benefit a third person; the intention must clearly appear from the terms of the contract. *Id.* Such an intent may be shown by naming a specific third party or a class of third parties. *Id.*

■ The contract at issue is a third-party beneficiary contract. The intent to benefit Marjory and Jack, Clarence Hoffman's two children, is clearly apparent from the writing which evidences the agreement. Clarence Hoffman specifically named the persons who, in addition to the parties themselves, would be benefited by the agreement. The contract by its terms imposes a duty upon Carla Schicke in favor of Clarence Hoffman's children. Schicke was to devise whatever remained of the parties' mutual estates to "Marm and Jack." Plainly, the performance of the terms of the contract would directly inure to Marjory's benefit as Schicke's surviving devisee. Marjory is the real party in interest. *Cf. VanOrman v. VanOrman* (1942), 112 Ind.App. 394, 41 N.E.2d 693 (Agreement to convey stocks and other personalty to son in exchange for son's agreement upon father's death to create trust for benefit of grandchildren and pay mother monthly annuity for her life, supported by consideration, inured to mother's benefit and made her real party in interest, permitting her to maintain suit in her own name). *See also Copeland v. Summers* (1894), 138 Ind. 219, 37 N.E. 971; *Stevens v. Flannagan* (1891), 131 Ind. 122, 30 N.E. 898; *Lamb v. Donovan* (1862), 19 Ind. 40; *Krull v. Pierce* (1947), 117 Ind.App. 638, 71 N.E.2d 617.

■ Lastly, the estate of Carla Schicke argues that the agreement evidenced by the letter was conditioned upon Clarence Hoffman's death as a consequence of military service. This is perhaps one reading of the letter. But, Clarence Hoffman retired from the air force in 1965, three years before Schicke made her will. Consequently, there is evidence in addition to the letter

supporting the factual conclusion Clarence Hoffman's death while serving in the military was not intended to be a necessary precondition to the parties' obligations under the contract.

We conclude that the estate of Carla Schicke has not demonstrated that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of the law. The grant of summary judgment in the estate's favor should be and is reversed.

Judgment reversed.

NAJAM and CONOVER, JJ., concur.